Opinion
LEWIS, J.
Based upon evidence obtained via an automated photographic enforcement system within the City of Santa Ana on February 17, 2009, *Supp. 11 appellant, Danny Byongun Park, was convicted of failing to stop for a red signal in violation of Vehicle Code section 21453, subdivision (a). On appeal, as at trial, appellant contends that the citation was unlawfully issued and that the conviction is therefore invalid, because the People failed to demonstrate compliance with the warning requirements of Vehicle Code section 21455.5, subdivision (b).
Appearing as amicus curiae, the City of Santa Ana contends that the requirements of Vehicle Code section 21455.5, subdivision (b), were satisfied by the issuance of warning notices six years earlier when the first photographic enforcement equipment was. installed within the City’s jurisdictional limits, and that no additional 30-day warning notice program was necessary when photographic enforcement equipment was installed at the particular intersection at which appellant’s violation was recorded. For the reasons set forth below, we agree with appellant’s construction of the statute and consequently reverse the judgment of the trial court.
DISCUSSION
A. The Governing Statute
When issued “based on an alleged violation . . . recorded by an automated enforcement system pursuant to Section 21455.5,” a written notice to appear constitutes a complaint to which the defendant may enter a plea. (Veh. Code, § 40518, subd. (a).) The issuance of citations based upon automated traffic enforcement systems is thus governed by the procedural requirements of Vehicle Code section 21455.5. Subdivision (b) of section 21455.5 provides, “Prior to issuing citations under this section, a local jurisdiction utilizing an automated traffic enforcement system shall commence a program to issue only warning notices for 30 days. The local jurisdiction shall also make a public announcement of the automated traffic enforcement system at least 30 days prior to the commencement of the enforcement program.”
The record indicates that the “local jurisdiction” which utilized the automated traffic enforcement system in this case was the City of Santa Ana (the City) and that the City sought to comply with Vehicle Code section 21455.5, subdivision (b) by making public announcements and issuing warning notices during a 44-day period when the first automated enforcement equipment was activated at a different intersection in 2003. The trial court evidently concluded that the requirements of section 21455.5, subdivision (b), were satisfied by these actions. Appellant, however, argues that “automated enforcement system” refers not to the entirety of all automated cameras located at intersections throughout the City, but rather to the set of photographic equipment installed at each individual intersection, and that his *Supp. 12 conviction should be reversed because no warning notices or public announcements were issued pursuant to section 21455.5, subdivision (b), with respect to the intersection at which the violation occurred in this case. The case thus presents a clearly defined issue of statutory construction. “Our task in construing a statute is to ascertain and give effect to the Legislature’s intent. [Citation.] We begin by examining the words of the statute, giving them their usual and ordinary meaning and construing them in the context of the statute as a whole. [Citations.] If the plain language of the statute is unambiguous and does not involve an absurdity, the plain meaning governs. [Citations.] If the statute is ambiguous, the court may consider a variety of extrinsic aids, including the apparent purpose of the statute. [Citation.]” (Leonte v. ACS State & Local Solutions, Inc. (2004) 123 Cal.App.4th 521, 526-527 [19 Cal.Rptr.3d 879].) Although no published decision Has directly addressed the meaning of subdivision (b) of section 21455.5, the Leonte opinion, in discussing the statute, appears to have assumed that “system” refers to the automated enforcement equipment at each intersection: “Former Vehicle Code section 21455.5 (Stats. 2001, ch. 496, § 1)[1] authorized the use of automated traffic enforcement systems at intersections where drivers are required to stop.” (Leonte, at p. 526.)
B. Plain Meaning of the Word “System”
The trial court’s construction of Vehicle Code section 21455.5, subdivision (b) is inconsistent with the plain meaning of the word “system” as used in Vehicle Code section 21455.5, as well as in related statutory provisions. Section 21455.5, subdivision (a), provides that “the intersection . . . may be equipped with an automated enforcement system,” and requires a governmental agency utilizing “the system” to “[i]dentif[y] the system by signs that clearly indicate the system’s presence and are visible to traffic approaching from all directions . . . .” (Id., subd. (a)(1).) Based upon this intersection-specific usage, “automated traffic enforcement system” in section 21455.5, subdivision (b) cannot refer to a municipality’s overall automated enforcement plan, but must instead refer to each individual set of automated equipment operated at an intersection within the municipal jurisdiction.
Other references to “system” and “equipment” within the statutory scheme are consistent with this construction. Vehicle Code section 21455.7, subdivision (a) prescribes change intervals for yellow lights “[a]t an intersection at which there is an automated enforcement system . . . .” Vehicle Code section 21455.5, subdivision (d), permitting specified operational aspects of *Supp. 13 “the system” to be contracted out if a governmental agency “maintains overall control and supervision of the system,” does not necessarily refer to the entire aggregation of automated enforcement equipment operated by a governmental agency, inasmuch as the agency may elect to “contract[] out” the operation of intersection-specific systems within its jurisdiction to multiple contractors. Similarly, because the statute does not require governmental agencies to grant operational responsibilities exclusively to a single contractor, the prohibition in section 21455.5, subdivision (d), against contracting out certain operational activities “to the manufacturer or supplier of the automated enforcement system” is not evidence of a legislative intent for each agency to operate a single “system.” Contrary to amicus curiae’s assertion, Vehicle Code section 21455.6, subdivision (a), does not require municipalities to conduct a public hearing every time use of an automated enforcement system is proposed, but rather it requires the governing body to hold such a hearing only “prior to authorizing the city or county to enter into a contract for use of the system”; if a system is installed at a new intersection pursuant to an existing contract, there is no need for a hearing.
An intersection-specific construction is also consistent with the common definition of “system” as a group of regularly interacting or interdependent items forming a unified whole. (See Meniam-Webster Online Diet. <http://www.merriam-webster.com/dictionary/system> [as of July 23, 2010].) Although automated enforcement equipment operating at a particular intersection must interact in a manner necessary to produce photographic images of a violation, sets of equipment operating at different intersections within a municipality need not interact with each other in order to fulfill that function, and a municipality might even elect to operate incompatible types of equipment at different intersections. Tellingly, one of the People’s own trial exhibits, a hearsay document containing information regarding the automated enforcement equipment operated by the City, refers to “each intersection where an Automated Red Light Enforcement System is installed” and to “[t]he intersections where the Automated Red Light Enforcement Systems are operated.”
C. Legislative History
Even if use of the word “system” in Vehicle Code section 21455.5 were ambiguous, the legislative history of section 21455.5 demonstrates that the word was intended to refer to the set of equipment installed and operated at an individual intersection and not to a municipality’s entire aggregation of such equipment. Section 21455.5 was originally enacted in 1995 (Sen. Bill No. 833 (1995-1996 Reg. Sess.); Stats. 1995, ch. 922, §4, p. 7035). According to the Legislative Counsel’s Digest for Senate Bill No. 833, section 21455.5 expanded the use of “automated rail crossing enforcement systems” *Supp. 14 (at that time codified in Veh. Code, § 22451, subd. (c)), to encompass “all places where a driver is required to respond to an official traffic control signal showing different colored lights.” With this expansion, the system was renamed “automated enforcement system.” (Legis. Counsel’s Dig., Sen. Bill No. 833 (1995-1996 Reg. Sess.) 5 Stats. 1995, Summary Dig., p. 399.) Mirroring the intersection-specific language of section 21455.5, section 22451, subdivision (c) now provides that a notice to appear may be issued pursuant to Vehicle Code section 40518 “[wjhenever a railroad or rail transit crossing is equipped with an automated enforcement system . . . .”
Vehicle Code section 21362.5, subdivision (a), enacted in conjunction with Vehicle Code section 40518 in 1994, refers to the same “system” in a clearly intersection-specific context: “Railroad and rail transit grade crossings may be equipped with an automated rail crossing enforcement system if the system is identified by signs clearly indicating the system’s presence and visible to traffic approaching from each direction.” (§ 21362.5, subd. (a).) The purpose of these warning requirements was also described in intersection-specific language in the legislative findings and declarations of the Rail Traffic Safety Enforcement Act (Sen. Bill No. 1802 (1993-1994 Reg. Sess.)), which added subdivision (c) to Vehicle Code section 22451: “Automated rail crossing enforcement systems that photographically record violations occurring at rail crossing signals and rail crossing gates are a significant deterrent to these violations where motorists are aware of the presence of the automated systems.” (Stats. 1994, ch. 1216, § 2(c), p. 7491.)
An amendment to Vehicle Code section 21455.5 proposed in 2003 (Sen. Bill No. 780 (2003-2004 Reg. Sess.)) would have required warning notices to be issued “during the first 30 days after the first recording unit is installed.” (Id., § 11.) The Legislature’s rejection of this language in a year when other amendments to the statute were enacted provides further evidence of a legislative intention for the 30-day warning period to continue to apply, instead, to each installation of automated enforcement equipment at an intersection. (See City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 88-89 [260 Cal.Rptr. 520, 776 P.2d 222]; People v. Adams (1976) 59 Cal.App.3d 559, 565-566 [131 Cal.Rptr. 190].) Section 21455.5 was instead amended via Assembly Bill No. 1022 (2003-2004 Reg. Sess.), and the Legislative Counsel’s Digest concerning that bill (see Stats. 2003, ch. 511) noted that “[ejxisting law authorizes the limitline, intersection, or other places where a driver is required to stop to be equipped with an automated enforcement system” and that “[e]xisting law requires that, at an intersection at which there is an automated enforcement system in operation the minimum yellow light change interval be established in accordance with the Traffic Manual of the Department of Transportation.” (Legis. Counsel’s Dig., Assem. Bill No. 1022 (2003-2004 Reg. Sess.).)
*Supp. 15 It would make little sense for the scope of the 30-day warning period to be limited temporally and to be defined arbitrarily by the geographic size of the local jurisdiction, inasmuch as the legislatively stated purpose of the warning requirement is to deter red light violations. This purpose is best achieved by the issuance of new warnings and announcements to proximate users each time automated enforcement equipment commences operation at an intersection.
CONCLUSION
Because the record in this case shows a lack of compliance with the requirement of Vehicle Code section 21455.5, subdivision (b), that a municipality utilizing an automated enforcement system at an intersection comply with the prescribed warning requirements “[pjrior to issuing citations,” the conviction must be reversed. (See Ralph v. Police Court (1948) 84 Cal.App.2d 257, 258-259 [190 P.2d 632]; People v. Municipal Court (Pellegrino) (1972) 27 Cal.App.3d 193, 206 [103 Cal.Rptr. 645].)
DISPOSITION
The judgment is reversed, with directions that the charge be dismissed.
Tucker, Acting P. J., concurred. Robinson, J., concurred in judgment only.

 Subdivision (b) of the cited 2001 version of Vehicle Code section 21455.5 was identical to the current subdivision.