Filed 3/13/14

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,                                  )
                                             )
      Plaintiff and Respondent,      )
                                             )            S202483
      v.                             )
                                             )            Ct.App. 2/3 B236337
STEVEN EDWARD GRAY,                          )
                                             )            Los Angeles County
      Defendant and Appellant.       )            Super. Ct. No. C165383
_____)

      Statutory law allows a city to install at an intersection an automated traffic enforcement device that photographs a traffic law offender, who is then issued a citation, as was defendant, who went through a red light in Culver City and was later convicted of violating the red light traffic law (Veh. Code, § 21453, subd. (a); all further undesignated statutory references are to the Vehicle Code). Operation of such a device must be preceded by a public announcement and an initial 30-day period during which warnings are given instead of citations. (§ 21455.5, subd. (b), hereafter section 21455.5(b).) At issue here is whether those statutory requirements pertain only to the city's *first* installation of an automated traffic enforcement device within a city, or, as defendant argues, also to *each later* installation of such devices at different intersections within the city.

      Defendant's view finds support in the overall statutory scheme involving automated traffic enforcement. Thus, unlike the Court of Appeal, we conclude that the public announcement and warning requirements apply to each installation

1

of such a device. We nevertheless affirm the Court of Appeal, which upheld defendant's conviction, because, like that court, we reject defendant's argument that compliance with the statute's requirement of a 30-day period of warning notices is a precondition to issuing a valid citation for a red light traffic law violation.

**I**

In 1998, the City of Culver City (the City) installed its first automated traffic enforcement device, at the intersection of Washington Boulevard and La Cienega Boulevard, under the authority of section 21455.5's subdivision (a). For convenience, we will refer to such devices as "red light cameras," as that is the term used in popular discourse. In compliance with section 21455.5(b), the City made a public announcement concerning its initial red light camera, and it gave violators warning notices, instead of citations, for the first 30 days that the camera was operational. Thereafter, the City installed red light cameras at several other intersections *without* making new public announcements, and *without* giving violators warning notices, instead of citations, for the first 30 days that a camera was operational at a new intersection.

In June 2006, the City installed a red light camera at the intersection of Washington Boulevard and Helms Avenue, without a public announcement and without an initial 30-day period of warning notices. More than two years later, in November 2008, that camera photographed a car registered to defendant Steven Edward Gray driving through a red traffic light, and a citation was issued. (§ 21453, subd. (a).)

Defendant pled not guilty and sought dismissal, asserting that the City had failed to comply with section 21455.5(b)'s requirements of a public announcement and a 30-day period of warning notices with respect to the camera that recorded his traffic violation. The trial court denied defendant's motion to dismiss, ruling

2

that the statutory requirements pertained only to a city's *first* installation of a red light camera and not to later installations at different intersections.

At trial, defendant stipulated that he was the driver depicted in the photographic evidence recorded by the red light camera. In addition, the police officer in charge of the City's red light camera enforcement program testified about the installation, functioning, operation, and maintenance of the device.

The trial court found defendant guilty of the charge of not stopping for a red light (§ 21453, subd. (a)) and ordered him to pay a fine. Defendant appealed to the Appellate Division of the Los Angeles County Superior Court, which upheld the trial court's decision. The appellate division expressly disagreed with *People v. Park* (2010) 187 Cal.App.4th Supp. 9, which held that a public announcement and 30-day period of warning notices were required for *each* installation of a red light camera.

The Court of Appeal ordered the case transferred to itself. (See Code Civ. Proc., § 911; Cal. Rules of Court, rule 8.1002.) It then affirmed the decision of the superior court's appellate division. We granted defendant's petition for review.

**II**

**A. Section 21455.5(b)**

Section 21455.5(b) provides: "Prior to issuing citations under this section, a local jurisdiction utilizing an automated traffic enforcement *system* shall commence a program to issue only warning notices for 30 days. The local jurisdiction shall also make a public announcement of the automated traffic enforcement *system* at least 30 days prior to the commencement of the enforcement program." (Italics added.) Defendant here argues that a red light camera at any intersection is, by itself, a "system" because the equipment is capable of operating independently. Therefore, he asserts, a new public

3

announcement and 30-day period of warning notices are required for each new intersection equipped with red light cameras.  The City responds that the word "system" in section 21455.5(b) refers to the entire citywide red light camera enforcement program.  Thus, the City argues, the statute's requirements of a public announcement and a 30-day period of warning notices apply only when the *first* red light camera was made operational at some intersection within the City's boundary.  As we noted earlier, a red light camera was first installed in the City in 1998, whereas the camera at issue here was installed in 2006.

"In construing a statute, we seek ' "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." ' (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77; see *Miklosy v. Regents of Univ. of Cal.* (2008) 44 Cal.4th 876, 888.)  Our analysis starts with the statutory language because it generally indicates legislative intent.  (*Klein*, *supra*, at p. 77; *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 986.)  If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls.  (*Miklosy*, *supra*, at p. 888; see *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304; *People v. King* (2006) 38 Cal.4th 617, 622.)" (*People v. Stanley* (2012) 54 Cal.4th 734, 737.)  In addition, "[t]he language [of a statute] is construed in the context of the statute as a whole and the overall statutory scheme . . . ." (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)  Thus, when the same word appears in different places within a statutory scheme, courts generally presume the Legislature intended the word to have the same meaning each time it is used.  (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288-289; *People v. Dillon* (1983) 34 Cal.3d 441, 468.)

4

Section 21455.5 is one of several Vehicle Code sections that address the use of red light cameras. A look at how the Legislature used the word "system" in those various statutes supports defendant's argument here that the word "system" in section 21455.5(b) was intended by the Legislature to apply to *each* new camera installed at an intersection.

For example, subdivision (a) of section 21455.5 states that "[t]he limit line, *the intersection*, or a place designated in Section 21455 . . . may be equipped with an automated traffic enforcement *system* . . . ." (Italics added.) As used there, the word "system" necessarily refers to the specific equipment in operation *at a particular intersection*, not to the entire citywide red light camera enforcement program. Similarly, subdivision (a)(1) of section 21455.5 requires a city to "[i]dentif[y] the system by signs posted within 200 feet *of an intersection where a system is operating* . . . ." (Italics added.) And that statute's subdivision (a)(2) requires cities to "locate[] *the system at an intersection*." (§ 21455.5, subd. (a)(2), italics added.) In addition, section 21455.7's subdivision (a) imposes on a city certain obligations that apply to "*an intersection* at which there is an automated enforcement *system* in operation." (Italics added.) Finally, subdivision (c)(2)(A) of section 21455.5 states that "[p]rior to installing an automated traffic enforcement system after January 1, 2013, the governmental agency shall make and adopt a finding of fact establishing that *the system* is needed *at a specific location* for reasons related to safety." (Italics added.) These various statutory examples support defendant's argument here that the word "system" in section 21455.5(b) refers to the specific red light camera in operation at a particular intersection.

The City responds by noting that elsewhere in section 21455.5, the word "system" appears to have a broader meaning, referring to the entire citywide red light camera enforcement program. As an example, the City points to section

5

21455.5's subdivision (d), which permits cities to "contract[] out" "operation of the system." The City argues that the Legislature was referring to a single contract for the entire city, and therefore "system" as used in section 21455.5, subdivision (d) does not refer merely to the automated traffic enforcement device at a single intersection. (See § 21455.5, subd. (c)(1) [discussing "uniform guidelines" for operation of "an automated traffic enforcement system"; it would be odd for a city to develop "uniform guidelines" for operation of just a single camera].) The City also cites Merriam-Webster's Collegiate Dictionary (10th ed. 2000) page 1194, which defines the word "system" as "a regularly interacting or interdependent group of items forming a unified whole." The City points out that all of its red light cameras are connected to a computer, and therefore they together constitute a single "system."

Because there is ambiguity regarding the scope of the word "system" in section 21455.5(b) — as highlighted by the conflicting statutory constructions adopted by the Court of Appeal here and by the appellate division of the superior court in *People v. Park*, *supra*, 187 Cal.App.4th Supp. 9 — we need to go beyond the statutory language and consider the statute's legislative history. (*People v. King*, *supra*, 38 Cal.4th 617, 622.) Did the Legislature's use of the word "system" in section 21455.5(b) refer to the red light camera installed at a specific intersection, or does "system" refer to the entire citywide red light camera enforcement program? We explore that issue below.

The Legislature enacted section 21455.5 in 1995 as an expansion of an existing statutory scheme that authorized red light cameras at railroad crossings, and the railroad crossing statutory scheme uses intersection specific language when referring to such cameras. (See §§ 22451, subd. (c) [a notice of violation may be issued "[w]henever a railroad or rail transit crossing is equipped with an automated enforcement system"], 21362.5, subd. (a) ["Railroad and rail transit

6

grade crossings may be equipped with an automated rail crossing enforcement system if the system is identified by signs . . . visible to traffic approaching from each direction."].)  In expanding the railroad crossing statutory scheme to include red light cameras at street intersections, we can reasonably assume that the Legislature used the word "system" in the same way.  (See *People v. Canty*, *supra*, 32 Cal.4th at p. 1276.)

Moreover, the legislative analyses of the bill that enacted section 21455.5 suggest that the Legislature understood the term "system" to refer to a red light camera installed at a particular intersection rather than to the entire citywide enforcement program.  The Senate Rules Committee analysis explained that previous legislation had "authorized the use of automated rail crossing enforcement systems (red light cameras) to record violations occurring at rail crossing signals and gates."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 833 (1995–1996 Reg. Sess.) as amended Sept. 12, 1995, p. 2.)  The parenthetical reference to "red light cameras" after the plural word "systems" indicates that the Legislature understood the word "system" to refer to an individual camera, not to the entire citywide program.  Similarly, the Assembly analysis of the same bill explained that "[e]xisting law authorize[d] . . . [g]overnmental agencies . . . to use automated rail crossing enforcement systems (photographic equipment) . . . ."  (Assem. Com. on Transportation, 3d reading analysis of Sen. Bill No. 833 (1995–1996 Reg. Sess.) as amended Sept. 12, 1995, p. 1.)  Again, the parenthetical reference to "photographic equipment" after the plural word "systems" indicates that the Legislature understood the word "system" to refer to the photographic equipment alone, not to the citywide network of photographic equipment and computer equipment.

Public policy supports that conclusion.  The warning notices required by section 21455.5(b) serve to inform the drivers who frequently use a particular

7

intersection that the city's enforcement method has changed. We see no justification for a rule requiring warnings to drivers who frequently use one intersection, but not to drivers who frequently use a different intersection.

The legislative history of section 21455.5(b) thus demonstrates that the statute's use of the word "system" refers to the red light camera used at a particular intersection or vehicle stopping point. Therefore, the City should have complied with section 21455.5(b)'s requirements of (1) publicly announcing in 2006 its intention to use a red light camera at the intersection where defendant was cited, and (2) issuing warning notices instead of citations for the first 30 days of the camera's operation at that intersection.

## B. Effect of City's Noncompliance With Section 21455.5(b)

Defendant argues that he cannot be convicted of violating the red light traffic law (§ 21453, subd. (a)) if the City has not proved compliance with section 21455.5(b)'s requirement of a 30-day period of warning notices. Defendant relies on language in section 21455.5(b) stating that a local agency that uses a red light camera to enforce a traffic signal "shall" issue warning notices for 30 days "[p]*rior to* issuing citations under this section." (Italics added.) Defendant reads this language as creating a jurisdictional precondition: Until a city complies with the requirement of a 30-day period of warning notices, its red light traffic citations at the intersection in question are invalid (assuming they are based on evidence from a red light camera), and therefore the trial court adjudicating those citations lacks jurisdiction. We disagree.

Section 21455.5(b)'s phrase "[p]rior to issuing citations" merely states *when* the warning notices must be given; it does not create a jurisdictional precondition to enforcement of the red light traffic law (§ 21453, subd. (a)). Of significance here, section 21455.5(b) does not state what, if any, consequences

8

might follow from a city's noncompliance with its requirements, and the red light traffic law (§ 21453, subd. (a)) nowhere suggests that a city must prove its compliance with section 21455.5(b) to obtain a conviction. As the Court of Appeal noted, that legislative silence is in stark contrast to section 40803's subdivision (b), which states that in a prosecution for exceeding the vehicle speed limit, the prosecution must prove "as part of its prima facie case" that the evidence of a violation "is not based upon a speedtrap." Likewise, the Legislature could have provided that in a prosecution for violation of the red light traffic law (§ 21453, subd. (a)), the prosecution must prove as part of its prima facie case that the city complied with section 21455.5(b)'s requirement of a 30-day period of issuing warning notices before issuing citations, but no such statement appears.

When, as here, a statute sets forth a procedural requirement but does not set forth any penalty for noncompliance, a party may reasonably question whether the statute is merely directory, not mandatory. "[T]he 'mandatory' or 'directory' designation does not refer to whether a particular statutory requirement is obligatory or permissive, but instead denotes ' "whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." ' [Citation.]" (*City of Santa Monica v. Gonzales* (2008) 43 Cal.4th 905, 923-924 (*City of Santa Monica*).) Courts must examine "whether the statutory requirement at issue was intended to provide protection or benefit to . . . individuals . . . or was instead simply designed to serve some collateral, administrative purpose." (*People v. McGee* (1977) 19 Cal.3d 948, 963.) If the latter, then it is merely directory, and failure to comply with it does not invalidate later governmental action. (See, e.g., *In re Richard S.* (1991) 54 Cal.3d 857, 866 [finding a rule that used the term "shall," but that served only an administrative purpose, to be directory, not mandatory]; *Cal-Air Conditioning, Inc. v. Auburn Union School District* (1993) 21

9

Cal.App.4th 655, 673 [" 'provisions defining time and mode in which public officials shall discharge their duties and which are obviously designed merely to secure order, uniformity, system and dispatch in the public bureaucracy are generally held to be directory' "].)

The mandatory or directory inquiry does not complete the analysis, however. Our cases have additionally taken into consideration the purpose underlying the procedural requirement (*City of Santa Monica*, *supra*, 43 Cal.4th at p. 924; *Morris v. County of Marin* (1977) 18 Cal.3d 901, 909-910), and whether the party invoking the procedural requirement is among the class of persons that the requirement was designed to benefit (*People v. McGee*, *supra*, 19 Cal.3d at pp. 962-963). Thus, a statute might be mandatory, but a violation of the statute might nonetheless be inconsequential in a particular case. " ' " 'No one should be at liberty to plant himself upon the nonfeasances or misfeasances of officers . . . *which in no way concern himself*, and make them the excuse for a failure on his part to perform his own duty. On the other hand, he ought always to be at liberty to insist that directions which the law has given to its officers *for his benefit* shall be observed.' " ' [Citations.]" (*City of Santa Monica*, *supra*, at p. 924.)

Here, section 21455.5(b)'s requirement of a 30-day period of warning notices was for the benefit of those violators whose red light violations at the intersection in question occurred *when the red light camera first became operational*. Because the requirement lapsed, by its own terms, after 30 days, it could not have been for the benefit of a violator like defendant, whose red light violation at the intersection occurred *more than two years later*. Therefore, if the city had issued a citation to a driver *during the 30-day period when it should have been issuing warning notices under section 21455.5(b)*, that driver could have challenged the citation on the basis of noncompliance with the statute. Defendant here, however, is not among the class of people that the 30-day period of warning

10

notices was intended to benefit, and therefore he may not invoke the City's noncompliance with the warning notice requirement to invalidate his traffic citation. (See, e.g., *People v. Gonzales* (1986) 188 Cal.App.3d 586, 590 [the defendant lacked standing to raise the issue of noncompliance with statutes pertaining to negotiated pleas because the statutes were not enacted for the benefit of criminal defendants].)

According to defendant, rejection of his argument — that a city's compliance with section 21455.5(b)'s requirement of a 30-day period of warning notices is a jurisdictional precondition to enforcement of the red light traffic law (§ 21453, subd. (a)) — would be an unforeseeable expansion of the red light traffic law, and therefore federal due process protections preclude its retroactive application to him. (See *Bouie v. City of Columbia* (1964) 378 U.S. 347, 351-355 [South Carolina's interpretation of the law of trespass to cover the act of remaining on the premises of another after being asked to leave was unforeseeable and could not be applied retroactively].) For the reasons given earlier, our conclusion here is not unforeseeable, and therefore defendant's due process argument lacks merit.

To summarize, a city's compliance with section 21455.5(b)'s requirement of a 30-day period of issuing warning notices before using a red light camera to issue citations is not a jurisdictional precondition to enforcement of the red light traffic law (§ 21453, subd. (a)), and therefore the prosecution need not prove a city's compliance with the warning requirement to establish a red light traffic violation.

## III

We disagree with the Court of Appeal here that section 21455.5(b)'s requirements apply only to the initial installation of a red light camera within a city. Rather, those requirements apply each time such a camera is installed. We

agree with the Court of Appeal, however, in rejecting defendant's argument that noncompliance with section 21455.5(b)'s requirement of a 30-day period of warning notices precludes the City's prosecution of defendant for violating the red light traffic law.  Accordingly, we agree with the Court of Appeal's decision to uphold defendant's conviction.

The judgment of the Court of Appeal is affirmed.


KENNARD, J.


WE CONCUR:

CANTIL-SAKAUYE, C. J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Gray

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 204 Cal.App.4th 1041
**Rehearing Granted**

_____

**Opinion No.** S202483
**Date Filed:** March 13, 2014

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Lawrence Cho

_____

**Counsel:**

Law Offices of Sherman M. Ellison, Sherman M. Ellison; Wilson, Elser, Moskowitz, Edelman & Dicker and Robert Cooper for Defendant and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker and Robert Cooper for Drew Wren as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Joseph W. Singleton and Joseph W. Singleton for Mishel Rabiean as Amicus Curiae on behalf of Defendant and Appellant.

Dapeer, Rosenblit & Litvak, William Litvak and Caroline K. Castillo for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert Cooper
Wilson, Elser, Moskowitz, Edelman & Dicker
555 South Flower Street, 29th Floor
Los Angeles, CA  90071
(213) 443-5100

William Litvak
Dapeer, Rosenblit & Litvak
11500 W. Olympic Boulevard, Suite 550
Los Angeles, CA  90064
(310) 477-5575