Filed 11/13/20  P. v. Henderson CA4/1
### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D076878 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF11201399) |
| CALEB MARQUAN HENDERSON, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Riverside County, John D. Molloy, Judge.  Affirmed.

Nancy Olsen, by appointment of the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General,  Julie L. Garland, Assistant Attorney General, Meredith S. White and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

On July 10, 2019, Henderson filed a petition under Penal Code[1] section 1170.95 and Senate Bill No. 1437 (Senate Bill 1437) to have two attempted murder convictions vacated. After appointment of counsel and briefing, the superior court concluded Henderson was ineligible for relief because his convictions are not for felony murder or murder under the natural and probable consequences doctrine. Henderson maintains he is eligible for relief under section 1170.95 because his convictions are for attempted murder, a crime to which he contends section 1170.95 applies. We disagree and will affirm.

FACTUAL BACKGROUND

The facts of the underlying matter are not relevant to the legal issue before us. However, to provide some context of the underlying crime, we recite the facts as they were described in Henderson's direct appeal, *People v. Daquan Rashad Branch, et al.* (May 8, 2015, D067450) [nonpub. opn.] (*Branch*):[2]

"On February 9, 2012, Jason G. walked with friends through the El Dorado apartment complex in Moreno Valley, California. They were confronted by Henderson and two other individuals. Henderson asked for Jason's gang affiliation. Jason replied that he was a member of the Rolling 90's, a gang in Los Angeles. Henderson said they were in Sex Cash territory, Web Block, referencing a prominent Moreno Valley gang and one of its cliques. After this exchange, Jason and his friends went on their way.[3]

---

1       Further section references are to the Penal Code.

2       We grant defendant's request for judicial notice.

3       "At trial, Jason testified that he had previously been mistaken for a member of the Wild Flax gang. Wild Flax is a rival gang to Sex Cash."

2

"Later that day, Jason met his friend Kendrick P.  Kendrick was associated with the Harlem 30's, another Los Angeles gang.  Kendrick was familiar with Branch, Henderson, and Walker.  Kendrick had played video games with them that afternoon in an apartment in the El Dorado complex. Lareka Davis was a tenant in that apartment.  Henderson stayed there as well, and Branch and Walker came by sometimes.

"Jason and Kendrick were walking through the El Dorado complex when they saw Davis talking on her cell phone near her apartment.  Davis made a gesture towards them as they passed.  Soon afterwards, Jason noticed they were being followed by three individuals, later identified as Branch, Henderson, and Walker.  They closed the gap between themselves and Jason and Kendrick.  Henderson yelled out 'Web' or 'Web Block' at least once, and Walker fired shots at Jason and Kendrick.  Jason was struck once in the back, fracturing two ribs and puncturing a lung.  Jason ran to a nearby apartment, where the occupant called police.  Kendrick fled to a different apartment complex and told a security guard about the shooting.

"The Riverside County Sheriff's Department responded to the scene of the shooting.  Sheriff's deputies found five spent .380-caliber shell casings, as well as a live .380-caliber bullet.  After further investigation, including interviews with the victims, sheriff's deputies obtained and executed a search warrant at Davis's apartment.  Davis, Branch, and Henderson were inside.  A deputy observed Branch attempting to escape over the balcony of the apartment and ordered him to stop.  The search of the apartment revealed papers referencing the Web Block clique and a loaded .380-caliber handgun hidden in a bucket.  Forensic examination of the handgun revealed insufficient DNA to conduct an analysis.

"After her arrest, Davis told investigators she was at her apartment on the night of the shooting. She heard five loud booming sounds. A few minutes later, Branch and Henderson came back to the apartment sweating profusely. Davis was aware that Branch, Henderson, and Walker were members of Sex Cash and had overheard them say 'Web Block' in the past.[4]

"Walker also gave a statement to investigators, which was admitted only into the evidence heard by his jury. Walker admitted he was part of the group that confronted Jason earlier in the day. Walker also admitted he, Branch, and Henderson followed Jason and Kendrick the night of the shooting, but he said one of the others was the shooter. Walker explained that they thought Jason or Kendrick was from Sex Cash's rival gang Wild Flax.

"At trial, Jason described his encounter with Henderson and his friends earlier in the day. Jason also identified Henderson and Walker as two of the individuals who followed him and Kendrick later that night, and he testified that Walker was the shooter. Likewise, Kendrick identified Branch, Henderson, and Walker as the individuals who followed them on the night of the shooting. Kendrick also identified Walker as the shooter and testified that Henderson was the person who yelled 'Web' or 'Web Block' before the shooting.

"Davis denied that she was present at the apartment during the shooting. She stated that she could not remember what she told investigators because she was drunk, emotional, and felt threatened. An investigator testified to her prior statements. Another investigator, a gang

_____

4 "After being charged with attempted murder as a codefendant of Branch, Henderson, and Walker, Davis pleaded guilty to being an accessory after the fact and admitted the crime was committed to benefit the Sex Cash gang."

4

expert, provided evidence that Sex Cash was a criminal street gang; that Branch, Henderson, and Walker were active members of that gang; and that the shooting was committed to benefit the gang.

"Branch, Henderson, and Walker did not call any witnesses in their defense. At trial, their counsel highlighted potential inconsistencies and shortcomings in Jason's and Kendrick's identifications of the defendants. They also relied on Jason's and Kendrick's gang affiliations to argue their statements were unreliable."

PROCEDURAL BACKGROUND

On June 28, 2013, a jury convicted Henderson of two counts of attempted murder (§§ 187, subd. (a), 664) and one count of active participation in a criminal street gang (§ 186.22, subd. (a).) The jury found true two gang and firearms-related enhancements as to each attempted murder count. (§§ 186.22, subd. (b) & 12022.53, subd. (e)(1).)

The court sentenced Henderson to 50 years to life in prison plus 27 years and 8 months. We affirmed the conviction on direct appeal in *Branch*, and the Supreme Court denied review in September 2015.

On July 10, 2019, Henderson filed a petition in superior court to have his attempted murder convictions vacated and to be resentenced under section 1170.95 and Senate Bill 1437. The People filed an opposition explaining Henderson was ineligible for relief under section 1170.95 because he was not convicted of murder. The court appointed counsel to Henderson, and Henderson filed a reply, asserting the applicability of Senate Bill 1437 to his case.

Following a hearing in November 2019, the superior court dismissed the case, citing *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175 (*Lopez*) and *People v. Munoz* (2019)

5

39 Cal.App.5th 738, review granted November 26, 2019, S258234 (*Munoz*), which each concluded Senate Bill 1437 does not apply to the offense of attempted murder.

Henderson timely appealed.

DISCUSSION

Effective January 1, 2019, Senate Bill 1437 eliminated liability for murder under the felony murder and natural and probable consequences doctrines. (§§ 188, subd. (a)(3) & 189, subd. (e); *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1147 (*Anthony*).) In this appeal, Henderson argues Senate Bill 1437 also applies to attempted murder, and the superior court's denial of his petition to vacate the attempted murder convictions was therefore erroneous. We disagree, and we will affirm.

The interpretation of a statute is a question of law, subject to de novo review. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) " 'As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*People v. Cole* (2006) 38 Cal.4th 964, 974-975; *People v. Murphy* (2001) 25 Cal.4th 136, 142.) We examine the statutory language and give it a plain and commonsense meaning. (*Cole*, at p. 975.) If the statutory language is unambiguous, then the plain meaning controls. (*Ibid.*) It is only when the language supports more than one reasonable construction that we may look to extrinsic aids like legislative history and ostensible objectives. (*Ibid.*; *In re Young* (2004) 32 Cal.4th 900, 906.)

This matter tasks us with contemplating whether Senate Bill 1437 modifies accomplice liability for attempted murder and therefore whether a defendant convicted of attempted murder is eligible for relief under section 1170.95. We begin by looking at the language of the amended

6

statutes, giving them " ' " 'a plain and commonsense meaning.' " ' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) "We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended." (*People v. Birkett* (1999) 21 Cal.4th 226, 231; *People v. Gray* (2014) 58 Cal.4th 901, 906.)

Senate Bill 1437 addressed aspects of felony murder and the natural and probable consequences doctrine (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722), "redefin[ing] 'malice' in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no long 'be imputed to a person based solely on [his or her] participation in a crime.' (§ 188, subd. (a)(3).)" (*In re R.G.* (2019) 35 Cal.App.5th 141, 144 (*In re R.G.*).) Senate Bill 1437 also amended section 189 by adding subdivision (e), which states that a participant in the target felony who did not actually commit a killing is nonetheless liable for murder if he or she aided, abetted, or assisted the actual killer in first degree murder or was a major participant in the target crime and acted with reckless indifference to human life. (§ 189, subd. (e)(2)-(3).) The result is that Senate Bill 1437 "ensure[s] that murder liability is not imposed on a person who is not the actual killer, did not act with intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Anthony*, *supra*, 32 Cal.App.5th at p. 1147.)

In addition to these changes, Senate Bill 1437 added section 1170.95 to the Penal Code. It permits "[a] person convicted of felony murder or murder under a natural and probable consequences theory" to petition the sentencing court to vacate the murder conviction and resentence the petitioner on the remaining counts. (§ 1170.95, subd. (a); *In re R.G.*, *supra*, 35 Cal.App.5th at p. 144.)

7

Colleagues in the Second and Fourth Appellate Districts have addressed the applicability of Senate Bill 1437 to attempted murder and concluded section 1170.95 relief is not available to defendants convicted of attempted murder. (*Lopez*, *supra*, 38 Cal.App.5th at p. 1104, *Munoz*, *supra*, 39 Cal.App.5th at p. 757, *People v. Dennis* (2020) 47 Cal.App.5th 838, 846, review granted Jul. 29, 2020, S262184.) We agree with the reasoning offered by the court in *Lopez*, and we will follow it here.

In *Lopez*, *supra*, 38 Cal.App.5th 1087, the court explained: "[T]here is nothing ambiguous in the language of Senate Bill 1437, which in addition to the omission of any reference to attempted murder, expressly identifies its purpose as the need 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*Id.* at p. 1104.)

*Lopez* also points out that the language in section 1170.95 authorizes only those convicted of felony murder or murder under the natural and probable consequences theory to petition for relief, and it authorizes the court to hold a hearing regarding whether to vacate *murder* convictions. (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1104-1105, citing § 1790.95, subds. (a) & (d).) This authorization does not extend beyond murder convictions; the plain language of these statutes neither mentions attempted murder nor offers a procedure for vacating attempted murder convictions based on the natural and probable consequences doctrine. (See *Lopez*, at pp. 1104-1105; §§ 188, 189, 1170.95.)

8

Additionally, the language of section 189, subdivision (e) suggests the Legislature knowingly excluded attempted murder. Subdivision (e) states that an underlying felony can be either completed or attempted, but the same sentence omits the word "attempted" in the context of a participant's liability for murder. (§ 189, subd. (e) ["A participant in the perpetration or *attempted perpetration* of a felony listed in subdivision (a) in which a death occurs *is liable for murder* only if one of the following is proven" (italics added)].) " 'When the Legislature "has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded." ' [Citation.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 880.)

Moreover, in *Lopez*, the court explains that the exclusion of attempted murder from the statutes is consistent with the legislative history: "When describing the proposed petition process, the Legislature consistently referred to relief being available to individuals charged in a complaint, information or indictment 'that allowed the prosecution to proceed under a theory of first degree felony murder, second degree felony murder, or murder under the natural and probable consequences doctrine' and who were 'sentenced to first degree or second degree murder.' (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1.) In addition, when discussing the fiscal impact and assessing the likely number of inmates who may petition for relief, the Senate Committee on Appropriations considered the prison population serving a sentence for first and second degree murder and calculated costs based on that number. (See Sen. Com. on Appropriations, Rep on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 3 (Senate Committee on Appropriations Report).) The analysis of potential costs did not include inmates convicted of attempted murder." (*Lopez, supra*, 38 Cal.App.5th at p. 1105.)

9

*Lopez* concluded offenses charged under the natural and probable consequences doctrine can be based on a theory of vicarious liability, not actual or imputed malice; thus, the accomplice to attempted murder does not need to share the perpetrator's intent. (*Lopez, supra*, 38 Cal.App.5th at p. 1101, citing *People v. Chiu* (2014) 59 Cal.4th 155, 158, 164, 167.) "As a matter of statutory interpretation, Senate Bill 1437's legislative prohibition of vicarious liability for murder does not, either expressly or impliedly, require elimination of vicarious liability for attempted murder." (*Lopez*, at p. 1106.)

Henderson also contends that interpreting Senate Bill 1437 to exclude attempted murder could lead to anomalous results because a defendant convicted of aiding and abetting in an assault that leads to murder would be convicted and sentenced only for the assault, while a defendant convicted of aiding and abetting in an assault that leads to attempted murder could be convicted and sentenced both for assault and for attempted murder, resulting in a longer sentence. Moreover, he notes that because some sentence enhancements are available only for the attempted murder and not the underlying crime, those who are convicted of aiding and abetting a target crime that leads to attempted murder could receive lengthy, 25-year sentence, for which they would not be eligible were they only sentenced for the target crime. (See § 12022.53, subd. (a)(1) & (18).)

Although he maintains that the Legislature could not have reasonably intended these differences, it is clear from the plain language of Senate Bill 1437 that the Legislature did not intend to include attempted murder in the legislation, however anomalous the sentencing differences may appear. (*Birkett, supra*, 21 Cal.4th at p. 231 [follow plain meaning unless results are absurd *and* unintended].) The Legislative findings and declarations offered

10

in the nonpublished portion of the bill make clear that the bill was focused only on murder, not attempted murder: "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) § 1, subd. (f).) Moreover, " ' "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended." [Citations.]' " (*In re Greg F.* (2012) 55 Cal.4th 393, 407.)

Further, excluding attempted murder from Senate Bill 1437 does not necessarily lead to absurd results because "it is far from clear that interpreting Senate Bill 1437 to apply to convictions for murder, but not attempted murder, will always, or typically, result in longer sentences for the latter." (*Munoz, supra*, 39 Cal.App.5th at pp. 757-758.) The basic punishment for attempted murder is already far less severe than the punishment for murder; thus, this interpretation does not undermine the goal of making punishment commensurate with culpability. (*Ibid.*) And "[t]o the extent a disparity might exist in an individual case, that circumstance is not sufficient to render the plain language of the statute absurd." (*Id.* at pp. 759-760.)

Henderson urges us to consider the Fifth Appellate District's decision in *People v. Larios* (2019) 42 Cal.App.5th 956, 966, review granted February 26, 2020, S259983. But even the court in *Larios* concluded that a defendant convicted of attempted murder is "categorically excluded from seeking relief through the section 1170.95 petitioning procedure" (*id.* at p. 970) because

11

"[t]he plain language of section 1170.95, subdivision (a) limits relief to persons 'convicted of felony murder or murder under a natural and probable consequences theory.' " (*Id.* at p. 969.)

Finally, if, as Henderson maintains, the sentencing results were not a reflection of this stated intention, the remedy would be legislative. (See *Costa v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1177, 1184 ["[J]udicial review of a statute does not involve a consideration of the legislation's wisdom."].)

## DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.