# IN THE SUPREME COURT OF CALIFORNIA

In re A.N., a Person Coming Under the Juvenile Court Law.

---

THE PEOPLE,
Plaintiff and Respondent,
v.
A.N.,
Defendant and Appellant.

S242494

Second Appellate District, Division Six
B275914

Ventura County Superior Court
2015040294

---

May 4, 2020

Justice Chin authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Kruger, and Groban concurred.

Justice Liu filed a concurring opinion, in which Chief Justice Cantil-Sakauye and Justices Cuéllar, Kruger, and Groban concurred.

In re A.N.
S242494

Opinion of the Court by Chin, J.

The Legislature has established a detailed statutory scheme to govern juvenile truancy. (See e.g., Ed. Code, §§ 48260–48265; Welf. & Inst. Code, § 601.) We granted review to determine whether this scheme requires (1) the use of a school attendance review board (SARB) or a similar truancy mediation program, or (2) the issuance of a fourth truancy report, before the juvenile court may exercise jurisdiction over a minor on the basis of truancy. We hold that the juvenile court may exercise jurisdiction in a formal wardship proceeding on the basis of the minor having "four or more truancies within one school year" under Welfare and Institutions Code section 601, subdivision (b) if a fourth truancy report has been issued to the attendance supervisor or the superintendent of the school district, even if the minor has not been previously referred to a SARB or a similar truancy mediation program.[1] Because A.N.'s school had sent at least four truancy reports to the superintendent of the school district before the wardship petition was filed against A.N., we affirm the Court of Appeal's judgment that the juvenile court possessed jurisdiction over A.N.

_____

[1] Our holding is limited to the juvenile court's jurisdiction in a formal wardship proceeding initiated by the filing of a petition under Welfare and Institutions Code section 650. We do not consider the informal juvenile and traffic court's jurisdiction in a hearing conducted in accordance with Welfare and Institutions Code sections 255 through 258.

## I. FACTS AND PROCEDURAL BACKGROUND

By the time A.N. entered high school, she was struggling with difficult circumstances at home and in her personal life. Beginning in eighth grade, she developed school attendance problems that continued throughout her ninth grade year.

On October 6, 2015, the principal of A.N.'s school mailed a truancy notice to her parents. In the letter, the principal explained that A.N. had accumulated four unexcused absences or tardies, and he invited her parents to contact the school's attendance supervisor to "discuss solutions that will improve [A.N.'s] attendance." A week later, on October 13, the principal sent a second truancy notice listing another five unexcused absences or tardies. In this letter, the principal warned A.N.'s parents that their daughter was "at risk of being classified as a habitual truant," and he urged them to contact the attendance supervisor "as soon as possible." On December 15, the principal sent a third truancy notice documenting another 10 unexcused absences or tardies. In it, he stated that A.N. was a habitual truant, and he again requested that her parents contact the attendance supervisor "as soon as possible."[2]

Three days earlier, on December 12, a police officer had issued A.N. a citation for habitual truancy under Education Code section 48262.[3] Under that section, a pupil is classified as a "habitual truant" if he or she "has been reported as a truant three or more times per school year" and a school official has

---

[2] A.N.'s principal mailed both English and Spanish copies of each of his letters to A.N.'s parents.

[3] Unless otherwise specified, all statutory references are to the Education Code.

made "a conscientious effort to hold at least one conference with a parent or guardian of the pupil and the pupil himself."[4]

On December 31, the District Attorney filed a wardship petition against A.N. in the juvenile court. (See Welf. & Inst. Code, § 650.) The petition alleged that A.N. was a habitual truant under section 48262 and that she was within the jurisdiction of the juvenile court under Welfare and Institutions Code section 601.

Almost two weeks later, on January 12, 2016, A.N. and her mother attended a SARB meeting. They signed a contract stating that A.N. would attend school regularly and that her mother would provide information about any future absences.

During late April and early May, the juvenile court held a trial on the wardship petition. At trial, the school attendance supervisor testified that a computerized system automatically sends a report to the school district whenever a teacher records a student as absent from or tardy to class. He explained that the system also generates student attendance profiles that provide attendance supervisors with a list of each student's recorded absences and tardies. Additionally, he testified that he had spoken with A.N. on multiple occasions and provided her with information about available services. A.N.'s attendance profile and the letters sent from the principal to A.N.'s parents were admitted into evidence.

---

[4] Section 48262 also explains: "[A] conscientious effort means attempting to communicate with the parents of the pupil at least once using the most cost-effective method possible, which may include electronic mail or a telephone call." Although the record does not indicate whether A.N.'s parents received the principal's letters, it does indicate that a school official spoke with A.N.'s father over the phone.

On May 10, the juvenile court sustained the wardship petition. At A.N.'s request, the court ordered A.N. to pay a $50 fine rather than to complete 20 hours of community service. (See § 48264.5, subd. (d)(1), (2).)

On appeal, A.N. claimed that the juvenile court lacked jurisdiction because, at the time the petition was filed, (1) she had not yet appeared before a SARB and (2) a fourth truancy report had not been sent to her and her parents. (*In re A.N.* (2017) 11 Cal.App.5th 403 (*A.N.*).) The Court of Appeal affirmed the juvenile court's judgment, holding that neither of these steps were prerequisites to the juvenile court's jurisdiction over a minor on the basis of the minor having "four or more truancies within one school year" under Welfare and Institutions Code section 601, subdivision (b) (Welfare and Institutions Code section 601(b)). We granted A.N.'s petition for review.

## II. DISCUSSION

Before turning to the issues before us, we review our familiar principles of statutory construction. "We start with the statute's words, which are the most reliable indicator of legislative intent." (*In re R.T.* (2017) 3 Cal.5th 622, 627.) " 'We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose.' " (*Ibid.*, quoting *Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 293.) "If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views." (*John v. Superior Court* (2016) 63 Cal.4th 91, 96.)

## A. Background

As is relevant here, Welfare and Institutions Code section 601(b) provides: "If a minor between 12 years of age and 17 years of age, inclusive, has four or more truancies within one school year as defined in Section 48260 of the Education Code or a school attendance review board or probation officer determines that the available public and private services are insufficient or inappropriate to correct the habitual truancy of the minor, or to correct the minor's persistent or habitual refusal to obey the reasonable and proper orders or directions of school authorities, or if the minor fails to respond to directives of a school attendance review board or a probation officer or to services provided, the minor is then within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court." In brief, this subdivision lists three bases of juvenile court jurisdiction: (1) "four or more truancies within one school year"; (2) a determination by a SARB or a probation officer that available services are insufficient or inappropriate to correct the minor's truancy; or (3) a minor's failure to respond to the directives of a SARB or a probation officer or to services provided.

In this case, the Court of Appeal held that the juvenile court possessed jurisdiction in the formal wardship proceeding against A.N. on the basis of her "four or more truancies within one school year" under Welfare and Institutions Code section 601(b). (*A.N.*, *supra*, 11 Cal.App.5th at p. 406.) Consequently, we limit our consideration to whether (1) the use of a SARB or a similar truancy mediation program, or (2) the issuance of a fourth truancy report to the pupil and his or her parents or guardians, is a prerequisite to the juvenile court's jurisdiction in a formal wardship proceeding upon this basis.

At the outset, we agree with A.N. that Welfare and Institutions Code section 601(b) "cannot be read in isolation but must be harmonized" with the Education Code sections governing truancy. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 ["[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible."].) So, we briefly review the other sections of the statutory scheme that are most relevant to our analysis.

First, if a pupil "is absent from school without a valid excuse three full days in one school year or tardy or absent for more than a 30-minute period during the schoolday without a valid excuse on three occasions in one school year, or any combination thereof," section 48260, subdivision (a) provides that the pupil "shall be classified as a truant and shall be reported to the attendance supervisor or to the superintendent of the school district." If the pupil is "again absent from school without valid excuse one or more days, or tardy on one or more days," section 48261 provides that the pupil "shall again be reported as a truant to the attendance supervisor or the superintendent of the district." If the pupil is "reported as a truant three or more times per school year" and "an appropriate district officer or employee has made a conscientious effort to hold at least one conference with a parent or guardian of the pupil and the pupil himself, after the filing of either of the reports required by Section 48260 or Section 48261," section 48262 provides that the pupil "shall be deemed an habitual truant."

Meanwhile, section 48264.5 provides increasingly serious consequences that may result from a pupil's continued truancy or his or her failure to complete assigned programs. Subdivision

(a) states that "[t]he first time a truancy report is issued," the pupil and the pupil's parent or guardian may be requested to attend a meeting. Subdivision (b) provides that "[t]he second time a truancy report is issued," the pupil may be assigned to an afterschool or weekend study program, and that a pupil who fails to complete such a program "shall be subject to subdivision (c)." Subdivision (c) states that "[t]he third time a truancy report is issued," the pupil may be required to attend a SARB meeting or a similar truancy mediation program, and that a pupil who fails to complete such a program "shall be subject to subdivision (d)." Finally, subdivision (d) provides that "[t]he fourth time a truancy is issued," the pupil "may be within the jurisdiction of the juvenile court that may adjudge the pupil to be a ward of the court pursuant to Section 601 of the Welfare and Institutions Code."

## B. Use of a SARB or a Similar Truancy Mediation Program

First, we consider A.N.'s claim that the statutory scheme and *In re Michael G.* (1988) 44 Cal.3d 283 (*Michael G.*) require the use of a SARB or a similar truancy mediation program before a pupil comes within the jurisdiction of the juvenile court.

In *Michael G.*, *supra*, 44 Cal.3d 283, we considered whether the juvenile court may exercise its contempt power to detain a minor during nonschool hours. Our opinion recognized that the Legislature had previously amended the statutory scheme "to require referral of truants to [SARBs] before juvenile court intervention," and we described referral to a SARB as a "condition precedent to the juvenile court's intervention." (*Id.* at p. 290.) As we explain below, this dictum was abrogated by subsequent amendments to the statutory scheme.

When we decided *Michael G.*, *supra*, 44 Cal.3d 283, in 1988, the statutory scheme required habitual truants to be referred to a SARB or a similar truancy mediation program before they are referred to the juvenile court. Former section 601.1 of the Welfare and Institutions Code stated: "Any person under the age of 18 years who . . . is a habitual truant from school within the meaning of any law of this state, *shall, prior to any referral to the juvenile court* of the county, *be referred to a school attendance review board* pursuant to Section 48263 of the Education Code, *or to a truancy mediation program* pursuant to Section 601.3 of this code, *or to both* a school attendance review board and a truancy mediation program if both have been established in the county." (Welf. & Inst. Code, former § 601.1, as amended by Stats. 1985, ch. 667, § 1, p. 2256, italics added.) Additionally, section 601(b) formerly read: "If a *school attendance review board* determines that the available public and private services are insufficient or inappropriate to correct the habitual truancy of the minor, or to correct the minor's persistent or habitual refusal to obey the reasonable and proper orders or directions of school authorities, or if the minor fails to respond to directives of a *school attendance review board or to services provided*, the minor is then within the jurisdiction of the juvenile court . . . ." (Welf. & Inst., former § 601(b), as amended by Stats. 1976, ch. 1071, § 11, p. 4818, italics added.)

So, as our dictum in *Michael G.*, *supra*, 44 Cal.3d 283, recognized, former section 601.1 of the Welfare and Institutions Code mandated initial referral to a SARB or a similar truancy mediation program, and section 601(b) formerly provided only two bases of juvenile court jurisdiction—both of which contemplated the prior use of a SARB or a similar truancy mediation program. In 1994, however, Senate Bill No. 1728

(1993–1994 Reg. Sess.) (Senate Bill 1728) repealed former section 601.1—thereby removing the express requirement that a minor be initially referred to a SARB or a similar truancy mediation program—and amended section 601(b) to include a third basis of jurisdiction—a minor's "four or more truancies within one school year." (Stats. 1994, ch. 1023, §§ 6, 7, p. 6217.)

Without discussing the fact that Senate Bill 1728 repealed former section 601.1 of the Welfare and Institutions Code, A.N. asks us to read Education Code section 48264.5—a section *added* by Senate Bill 1728—to require initial referral to a SARB or a similar truancy mediation program. (Stats. 1994, ch. 1023, § 4, pp. 6215–2616.) As mentioned above, section 48264.5's subdivisions provide graduated consequences that may result from a pupil's continued truancy or the pupil's failure to complete assigned programs. Specifically, A.N. argues that a pupil *must* be referred to a SARB or a similar truancy mediation program, as described in section 48264.5, subdivision (c), before she comes within the jurisdiction of the juvenile court, as described in subdivision (d). Although A.N. acknowledges that subdivision (c) provides that a habitual truant "may" be referred to a SARB or a similar truancy mediation program, she contends that this discretionary language merely "reflect[s] the reality that not every county has established a SARB." In other words, she claims that initial referral to a SARB is still required in any county that has established one.

For support, A.N. looks to Senate Bill 1728's legislative history. Specifically, she points to a bill analysis prepared by the Assembly Committee on Public Safety, which commented: "*Upon the failure of the earlier steps* to alleviate the truancy problem, the juvenile court may exert jurisdiction over the minor pupil. . . . *Court intervention is reserved until after other*

*steps have failed*, so as not to overburden already heavy court calendars until necessary." (Assem. Com. on Pub. Safety, Rep. on Sen. Bill No. 1728 (1993–1994 Reg Sess.) as amended June 30, 1994, p. 3, italics added.) Likewise, she cites the Legislative Counsel's summary digest, which stated: "This bill would provide that if a pupil *who has attended certain programs including a school attendance review board program*, has a 4th truancy in the same school year, the pupil shall be classified as an habitual truant, within the jurisdiction of the of the court." (Legis. Counsel's Dig., Sen. Bill No. 1728 (1993–1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 417, italics added.) According to A.N., this legislative history "makes clear" that the Legislature intended to *keep* the requirement that a minor be referred to a SARB or a similar truancy mediation program before the juvenile court.

First, we observe that nothing in the current statutory scheme expressly *requires* initial referral to a SARB or a similar truancy mediation program. Section 48264.5's subdivisions refer to actions that "may" be taken in response to a pupil's continued truancy or failure to complete assigned programs. Specifically, section 48264.5, subdivision (c) states that a habitual truant "*may* be referred to, and required to attend, an attendance review board . . . ." (Italics added). We are not persuaded by A.N.'s argument that this discretionary language merely "reflect[s] the reality that not every county has established a SARB," because the subdivision also provides that a habitual truant "*may*" be referred to and required to attend "a truancy mediation program pursuant to Section 48263 or pursuant to Section 601.3 of the Welfare and Institutions Code" *or*, in a school district that does not have such a program, "a comparable program deemed acceptable by the school district's

attendance supervisor." (*Ibid.*, italics added.) Similarly, section 48263, subdivision (a) states that a school district attendance supervisor or another designated school official "*may*" refer a habitual truant "to a school attendance review board, or to the probation department for services if the probation department has elected to receive these referrals." (Italics added.) Because Senate Bill 1728 repealed former section 601.1 of the Welfare and Institutions Code, which provided that a habitual truant "shall" be referred to a SARB or a similar truancy mediation program before the juvenile court, and because current Education Code sections 48263 and 48264.5 consistently use "may" to describe referrals to such programs, we understand the discretionary language of the statutory scheme to authorize, but not require, school officials to initially refer habitual truants to SARBs or similar truancy mediation programs. (See *In re Richard E.* (1978) 21 Cal.3d 349, 354 ["The ordinary import of 'may' is a grant of discretion."])

Second, we note that multiple analyses of Senate Bill 1728 informed legislators that the bill would repeal the requirement that a minor be referred to a SARB or a similar truancy mediation program before the juvenile court. (See, e.g., Assem. Com. on Education, Analysis of Sen. Bill No. 1728 (1993–1994 Reg. Sess.) as amended June 30, 1994, pp. 1, 2; Sen. 3d reading analysis of Sen. Bill No. 1728 (1993–1994 Reg. Sess.) as amended Aug. 19, 1994, pp. 1, 2; Sen. 3d reading analysis of Sen. Bill No. 1728 (1993–1994 Reg. Sess.) as amended Aug. 26, 1994, pp. 1, 2.) To this end, the Legislative Counsel's summary digest cited by A.N. also stated: "Under existing law, a juvenile who is an habitual truant is required to be referred to a school attendance review board or truancy mediation program, before referral to the juvenile court. . . . [¶] This bill would repeal the

section on referral to the school attendance review board or truancy mediation program . . . ." (Legis. Counsel's Dig., Sen. Bill No. 1728 (1993–1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 417.)

Any contradictory statements in Senate Bill 1728's legislative history may be explained by the Legislature's joint passage of Senate Bill 1728 and Assembly Bill No. 2658 (1993–1994 Reg. Sess.) (Assembly Bill 2658). (Stats. 1994, ch. 1024, p. 6218.) As is relevant here, Senate Bill 1728 contained a single provision to repeal former section 601.1 of the Welfare and Institutions Code (Stats. 1994, ch. 1023, § 7, p. 6217), but Assembly Bill 2658 contained alternate provisions: one that would *amend* former section 601.1, and another that would *repeal* former section 601.1 (Stats. 1994, ch. 1024, §§ 5, 5.5, pp. 6222–6223). Assembly Bill 2658 clarified that if Senate Bill 1728 was enacted first and Assembly Bill 2658 was enacted second, its provision *repealing* former section 601.1 would take effect, and its provision *amending* former section 601.1 would not.[5] (Stats. 1994, ch. 1024, § 8, p. 6225.) Because the Legislature passed both bills on the same day, it effectively delegated the decision whether to amend or repeal former

---

[5] The Legislature likely included this "double-jointing" provision to prevent Assembly Bill 2658's provision amending former section 601.1 of the Welfare and Institutions Code from "chaptering-out" Senate Bill 1728's provision repealing that section in the event that Senate Bill 1728 was enacted first and Assembly Bill 2658 was enacted second. (See *In re Thierry S.* (1977) 19 Cal.3d 727, 739–740 (*Thierry S.*) [explaining the Legislature's "double-jointing" procedure].)

section 601.1 to the Governor.[6] And, by signing Senate Bill 1728 before Assembly Bill 2658, the Governor elected to repeal section 601.1, thereby removing the express requirement that a minor be referred to a SARB or a similar truancy mediation program before the minor is referred to the juvenile court.[7]

A.N. and amicus curiae California Rural Legal Assistance (CRLA) also contend that referring truants directly to the juvenile court undermines the purposes of SARBs and similar truancy mediation programs: to address the underlying sources of attendance problems primarily through the provision of community services and to make juvenile court intervention a matter of last resort.

This argument is supported by several sections of the current statutory scheme. In the article of the Education Code governing SARBs, the Legislature has declared its intent that "intensive guidance and coordinated community services may be provided to meet the special needs of pupils with school

---

[6] Handwritten annotations on the Governor's chaptered bill files suggest that the Governor was informed accordingly. (Legis. Counsel, letter to Governor Pete Wilson (1993–1994 Reg. Sess.) Sept. 21, 1994, Governor's chaptered bill files, ch. 1023; Legis. Counsel, letter to Governor Pete Wilson (1993–1994 Reg. Sess.) Sept. 19, 1994, Governor's chaptered bill files, ch. 1024.)

[7] Absent evidence to the contrary, we presume the Governor signed Senate Bill 1728 before Assembly Bill 2658, because the former is chapter 1023, and the latter is chapter 1024 of the Statutes of 1994. (See Gov. Code, § 9510; *Thierry S.*, *supra*, 19 Cal.3d at p. 739 & fns. 10, 11 [explaining the rebuttable presumption that chapter numbers indicate the order in which the Governor signs bills into law].)

attendance problems or school behavior problems."[8] (§ 48320, subd. (a).) To fulfill this intent, the Legislature has established a step-by-step process for counties with a SARB or a probation department that has elected to receive habitual truant referrals. First, section 48263[9] authorizes school district attendance supervisors and other designated school officials to refer habitual truants to the SARB or to the probation department. (§ 48263, subd. (a); see § 48264.5, subd. (c).) When issuing such referrals, these school officials have a responsibility to provide "documentation of the interventions undertaken at the school" and "the reason for the referral." (§ 48263, subd. (a).) Then, the SARB or the probation officer must determine whether available community services can resolve the pupil's attendance problems. (*Id.* subd. (b)(1), (b)(2).) If so, the SARB or the probation officer is required to direct the pupil, the pupil's parents or guardians, or both to those services. (*Id.* subd. (b)(1).) If not, section 48320 authorizes the SARB to: "(1) Propose and promote the use of *alternatives to the juvenile court system*. [¶] (2) Provide, *in any proposed alternative*, for maximum utilization of community and regional resources appropriately employed in behalf of minors *prior to any involvement with the judicial system*. [¶] (3) Encourage an understanding that any *alternative* based on the utilization of community resources

---

[8] The bill that originally added this language also added former section 601.1 of the Welfare and Institutions Code, which originally required initial referral to a SARB. (Stats. 1974, ch. 1215, §§ 1, 9, pp. 2624–2625, 2629.)

[9] The bill that added Education Code section 48263 also amended former section 601.1 of the Welfare and Institutions Code to require initial referral to a SARB, or to a truancy mediation program, or to both. (Stats. 1984, ch. 754, §§ 2, 4, 5, pp. 2722–2725.)

carries an inherent agency and citizen commitment directed toward the continuing improvement of such resources and the creation of resources where none exist." (§ 48320, subd. (b), italics added.) In either case, if the pupil is ultimately referred to the juvenile court, the SARB or the probation officer must submit "documentation of efforts to secure attendance as well as its recommendations on what action the juvenile court should take in order to bring about a proper disposition of the case." (§ 48263, subd. (b)(2).)

Even in counties without a SARB or a probation department that receives habitual truant referrals, section 48264.5, subdivision (c) authorizes school officials to refer habitual truants to comparable truancy mediation programs. The graduated structure of this section's subdivisions seems to contemplate, at least as a general matter, that habitual truants will be brought to the juvenile court only after the truancy mediation process has failed. (See § 48264.5, subds. (c), (d).) Collectively, these sections suggest that the Legislature intended that habitual truants typically be referred to a SARB or a similar truancy mediation program before the juvenile court. (See conc. opn., *post*, at pp. 2–3.)

As explained above, however, after Senate Bill 1728's repeal of former section 601.1 of the Welfare and Institutions Code, no section expressly *requires* initial referral to a SARB or a similar truancy mediation program.[10] Because Senate Bill

---

[10] Both parties and amicus curiae CRLA also direct our attention to Welfare and Institutions Code section 258, subdivision (b), which provides: "If the minor is before the court on the basis of truancy . . . [¶] (1) The judge, referee, or juvenile hearing officer shall not proceed with a hearing unless both of

1728 also amended section 601(b) of the Welfare and Institutions Code to grant the juvenile court jurisdiction over minors with "four or more truancies," the bill may have been intended to afford local officials the flexibility to go directly to the juvenile court in such cases. Additionally, because the bill granted the juvenile court the authority to direct a habitual truant to attend a "court-approved truancy prevention program," the Legislature apparently contemplated that some minors would be referred to a truancy mediation program *after* the juvenile court.[11] (§ 48264.5, subd. (d)(3).) In such cases,

---

the following have been provided to the court: [¶] (A) Evidence that the minor's school has undertaken the actions specified in subdivisions (a), (b), and (c) of Section 48264.5 of the Education Code . . . . [¶ ] (B) The available record of previous attempts to address the minor's truancy." Both parties and CRLA assume that this subdivision applies to formal wardship proceedings (see Welf. & Inst. Code, § 650) in addition to hearings by the informal juvenile and traffic court (see Welf. & Inst. Code, §§ 255–258). Specifically, they believe that this subdivision requires a minor to have been referred to a SARB or a similar truancy mediation program—and, in A.N.'s view, to have failed to successfully complete such a program—before the juvenile court may *hold a hearing* in a formal wardship proceeding on the basis of truancy. As mentioned above, A.N. and her mother attended a SARB meeting before the juvenile court held the trial in the formal wardship proceeding against A.N. (See *ante*, p. 3.) Because A.N. does not argue that this subdivision was violated in her case, we do not address it here. (See also *ante*, p. 1, fn. 1.)

[11] If the juvenile court adjudges a minor to be a ward of the court solely on the basis of habitual truancy, the juvenile court may order: 20 to 40 hours of community service, a fine of $50 or less, attendance at a truancy prevention program, or suspension or revocation of driving privileges (if the minor has previously attended a SARB or a truancy mediation program). (Ed. Code, § 48264.5, subd. (d); see Welf. & Inst. Code, § 601, subd. (b)

initial referral to the juvenile court may ultimately result in the provision of services to address the underlying sources of the pupils' attendance problems.

For this reason, we hold that the use of a SARB or a similar truancy mediation program is not a prerequisite to the juvenile court's jurisdiction in a formal wardship proceeding on the basis of a minor having "four or more truancies within one school year" under Welfare and Institutions Code section 601(b). We recognize that this conclusion may be in tension with several sections of the statutory scheme, and we appreciate A.N. and CRLA's contention that referring habitual truants directly to the juvenile court is counterproductive to the goal of improving attendance. (See generally, conc. opn., *post*, at pp. 3–7.) But it is up to the Legislature to resolve any such tension and to act upon such policy arguments, if it deems such action appropriate.[12]

### C. Jurisdiction on the Basis of "Four or More Truancies"

We next turn to A.N.'s claim that Education Code section 48264.5, subdivision (d) (section 48264.5(d)) requires (1) a fourth truancy *report* to be issued, and (2) that the report be issued *to the pupil and the pupil's parents or guardians*, before the

---

[minor who is adjudged a ward of the juvenile court solely on the basis of habitual truancy shall not be held in a secure facility or removed from the custody of his or her parents or guardians except for the purposes of school attendance].)

[12] We are aware that pending legislation would eliminate the juvenile court's jurisdiction over minors on the basis of truancy by repealing and replacing Welfare and Institutions Code section 601. (Assem. Bill No. 901 (2019–2020 Reg. Sess.) §§ 19, 20, as amended by Sen. Com. on Appropriations, Sept. 6, 2019.)

juvenile court may exercise jurisdiction over a minor on the basis of the minor having "four or more truancies within one school year" under Welfare and Institutions Code section 601(b).

Again, Welfare and Institutions Code section 601(b) provides in relevant part: "If a minor . . . has *four or more truancies* within one school year as defined in Section 48260 of the Education Code . . . , the minor is then within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court." (Italics added.) And, as stated above, Education Code section 48264.5(d) provides: "The fourth time a *truancy is issued* within the same school year, the pupil may be within the jurisdiction of the juvenile court that may adjudge the pupil to be a ward of the court pursuant to Section 601 of the Welfare and Institutions Code." (Italics added.)

Because these subdivisions are in pari materia, we construe them together "so that all parts of the statutory scheme are given effect." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090–1091.) In particular, we note that the same bill (Senate Bill 1728) that amended Welfare and Institutions Code section 601(b) to provide that a minor with "four or more truancies" is "within the jurisdiction of the juvenile court" also added Education Code section 48264.5(d), which originally provided that "[u]pon the fourth truancy within the same school year," a pupil is "within the jurisdiction of the juvenile court." (Stats. 1994, ch. 1023, § 4, pp. 6215–2616.) For this reason, and because one section expressly references the other, we believe the Legislature intended "four . . . truancies" in Welfare and Institutions Code section 601(b) and "fourth truancy" in Education Code section 48264.5(d) to refer to the same set of circumstances, upon which the minor comes within the jurisdiction of the juvenile court.

### 1. Four "Truancies" and the "Issuance of a Fourth Truancy"

As already discussed, section 48264.5 provides increasingly serious consequences for a pupil's continued truancy or failure to complete assigned programs. As is relevant here, subdivisions (a), (b), and (c) of section 48264.5 begin, "The [first/second/third] time a truancy *report* is issued . . . ." (Italics added.) But the term "report" is missing from section 48264.5(d), which begins: "The fourth time a *truancy* is issued . . . ." (Italics added.)

The Court of Appeal determined that the Legislature intentionally omitted "report" from section 48264.5(d), and it concluded that a pupil comes within the jurisdiction of the juvenile court if she is "truant a fourth time (i.e., accrues six or more unexcused absences [or tardies])," even if a fourth truancy *report* has not been issued. (*A.N.*, *supra*, 11 Cal.App.5th at p. 406.) Under its reasoning, a "truancy" is the minimum number of unexcused absences or tardies needed to require the issuance of a truancy report. Because three unexcused absences or tardies are needed to require a first report (§ 48240), and a subsequent unexcused absence or tardy is needed to require an additional report (§ 48261), six unexcused absences or tardies are needed to require a fourth report. We reach a different interpretation.

To begin, we find the phrase "[t]he fourth time a truancy is issued" in section 48264.5(d) to be ambiguous. As used in each of section 48264.5's subdivisions, "issued" is a transitive verb— one that requires a direct object. In the first three subdivisions, "report" follows naturally as an object of "issued" because it is a concrete noun. In the fourth subdivision, "truancy" follows awkwardly because it is an abstract noun, generally defined as

"an act or instance of playing truant" or "the state of being truant." (Webster's Collegiate Dict. (10th ed. 1993) p. 1267.)

The Court of Appeal may have implicitly read "[t]he fourth time a truancy is issued" in section 48264.5(d) to mean "the fourth time a truancy *report* is *required to be* issued." Although this construction would solve the subdivision's grammatical problems, it would also mean that the consequences of subdivision (d) would be triggered by an unexcused absence or tardy, whereas the consequences of subdivisions (a), (b), and (c) would be triggered by the issuance of a truancy report. This could lead to the odd result that a pupil could be subject to the most serious consequences of the statutory scheme in subdivision (d) without being subject to the least serious consequences in subdivision (a), in the event that she accrues a sixth unexcused absence or tardy before being *reported* as truant.

We believe a better interpretation of section 48264.5(d) is "the fourth time a truancy *report* is issued." Specifically, the parallel structure of section 48264.5's subdivisions indicates that the Legislature intended subsequent occurrences of the same event—the issuance of a truancy report—to trigger the increasingly serious consequences of the section. More generally, when section 48264.5 is read in context, it seems that the Legislature did not intend unexcused absences or tardies to trigger increasingly serious consequences unless they are *reported* in accordance with the statutory scheme. For example, a third unexcused absence or tardy does not lead to any consequences unless the pupil is "reported to the attendance supervisor or to the superintendent of the school district" as required by section 48260. (See § 48264.5, subd. (a).) A fourth unexcused absence or tardy does not lead to more serious

consequences unless the pupil "has once been reported as a truant" and is "again . . . reported as a truant" as required by section 48261. (See § 48264.5, subd. (b).) Likewise, a fifth unexcused absence or tardy does not lead to classification as a habitual truant and to more serious consequences unless the pupil is "again . . . reported as a truant" as required by section 48261. (See §§ 48262, 48264.5, subd. (c).) This suggests that a sixth unexcused absence or tardy should not lead to the most serious consequences of the statutory scheme unless the pupil is "again . . . reported as a truant" as required by section 48261. (See § 48264.5, subd. (d).)

Even if the Legislature intentionally omitted the term "report" from subdivision (d), we do not believe it intended the omission to have substantive significance. When the Legislature added section 48264.5 in 1994, the section's subdivisions began: "Upon the [first/second/third/fourth] truancy . . . ." (Stats. 1994, ch. 1023, § 4, p. 6215). Thus, the subdivisions originally shared identical language and meaning; successive "truanc[ies]" triggered the increasingly serious consequences of each subdivision. In 2001, the Legislature amended the section such that subdivisions (a), (b), and (c) began, "The [first/second/third] time a truancy report is required . . . ," and subdivision (d) began, "The fourth time a truancy is required to be reported . . . ." (Stats. 2001, ch. 734, § 29, pp. 5786–5787.) At this time, the introductory language of subdivision (d) was slightly different from that of the other subdivisions, but its meaning was the same; successive truancies continued to trigger the increasingly serious consequences of each subdivision because successive truancies required successive reports under section 48261. In 2012, the Legislature again amended the section such that subdivisions

(a), (b), and (c) now begin, "The [first/second/third] time a truancy report is issued . . . ," and subdivision (d) now begins, "The fourth time a truancy is issued . . . ." (Stats. 2012, ch. 432, § 2.) With the 2012 amendment, the Legislature substituted "issued" for "required" in subdivisions (a), (b), and (c) and for "required to be reported" in subdivision (d). The apparent purpose of this amendment was to clarify that successive truancies must be *reported* in order to trigger the increasingly serious consequences of each subdivision. Nothing in the legislative history suggests that the Legislature intended the language in subdivision (d) to have different meaning than the language of the other subdivisions.

For these reasons, we interpret "[t]he fourth time a truancy is issued" in section 48264.5(d) to mean "the fourth time a truancy *report* is issued." Accordingly, we read "four or more truancies" in Welfare and Institutions Code section 601(b) to refer to four or more acts of being truant *that have been reported* in accordance with the statutory scheme.

### 2. Recipient of Truancy Reports

Next, we must determine the appropriate recipient of the truancy reports referenced in section 48264.5. A.N. contends that each of the section's subdivisions requires a report be sent to the pupil's parents or guardians before the juvenile court may exercise jurisdiction. In response, the Attorney General argues that the subdivisions reference the internal reports that must be sent to the attendance supervisor or the superintendent of the school district under sections 48260 and 48261. He observes, "[A.N.]'s argument may rest on a misapprehension that the 'truancy reports' in section 48264.5 are parental notifications [required by section 48260.5]."

As referenced above, section 48260, subdivision (a) requires a pupil to "be *reported* to the attendance supervisor or to the superintendent of the school district" upon his or her third unexcused absence or tardy. (Italics added.) Likewise, section 48261 requires a pupil previously "*reported* as a truant" to "again be *reported* as a truant to the attendance supervisor or the superintendent of the district" if he or she is again absent or tardy without excuse. (Italics added.) Moreover, section 48262 provides that a pupil who "has been *reported* as a truant three or more times per school year" is a habitual truant, provided that a school official has made "a conscientious effort to hold at least one conference with a parent or guardian of the pupil and the pupil himself, after the filing of either of the *reports* required by Section 48260 or Section 48261." (Italics added.) Meanwhile, section 48260.5, requires the school district to "*notify* the pupil's parent or guardian" upon the pupil's "initial classification as a truant." (Italics added.)

The Attorney General has the better interpretation. Section 48264.5's references to "truancy report[s]" must be interpreted in light of the entire statutory scheme. "[W]hen the same word appears in different places within a statutory scheme, courts generally presume the Legislature intended the word to have the same meaning each time it is used." (*People v. Gray* (2014) 58 Cal.4th 901, 906.) Accordingly, we presume the Legislature used "report" in section 48264.5 as a cross reference to "reports" in section 48262 and "reported" in sections 48260 and 48261, not to "notify" in section 48260.5. Additionally, we note that section 48260.5 requires a parental notification only upon the pupil's initial classification as a truant, whereas sections 48260 and 48261 require reports to be issued to the attendance supervisor or the superintendent upon the pupil's

initial classification as a truant *and* upon every subsequent unexcused absence or tardy. Therefore, the "first time," "second time," and "third time" a "truancy report is issued" in subdivisions (a), (b), and (c) of section 48264.5 more likely refer to the reports required by sections 48260 and 48261. This interpretation ensures that school officials are informed of a pupil's continued truancy and thus can take appropriate steps to address the situation, such as requesting the pupil and the pupil's parent or guardian attend a meeting (§ 48264.5, subd. (a)), assigning the pupil to an afterschool or weekend study program (*id.*, subd. (b)), requiring the pupil to attend a SARB meeting or a similar truancy mediation program (*id.,* subd. (c); see §§ 48260.6, subd. (a); 48263, subd. (a)), or issuing a notice to appear in juvenile court (§ 48264,5, subd. (d); see Welf. & Inst. Code, § 601, subd. (d)).

A.N. and CRLA argue that this construction would violate the due process rights of pupils and their parents and guardians. Assuming A.N. did not forfeit this argument by failing to raise it in her opening brief, we reject it on the merits. Although section 48264.5 does not require external reports be sent to the pupil's home, government officials must comply with basic due process requirements, including the statutory provisions meant to ensure the pupil and his or her parents or guardians receive adequate notice of the pupil's truancy and the potential consequences. For example, section 51101, subdivision (a)(4) requires the pupil's parent or guardian "[t]o be notified on a timely basis if their child is absent from school without permission." As previously explained, section 48260.5 requires the school district to notify the pupil's parent or guardian upon the pupil's "initial classification as a truant." Additionally, section 48262 provides that "no pupil shall be deemed an

habitual truant unless an appropriate district officer or employee has made a conscientious effort to hold at least one conference with a parent or guardian of the pupil and the pupil himself, after the filing of either of the reports required by Section 48260 or Section 48261."[13]

Therefore, we hold that a fourth truancy report must be issued *to the attendance supervisor or the superintendent of the school district* before the juvenile court may exercise jurisdiction over a minor on the basis of the minor's "four or more truancies within one school year" under Welfare and Institutions Code section 601(b).

### D. The District Attorney's Petition Against A.N.

Finally, we consider whether the juvenile court had jurisdiction over A.N.

The Court of Appeal held that the juvenile court had jurisdiction on the basis of A.N.'s "four or more truancies within one school year" under Welfare and Institutions Code section 601(b), but the court did not consider whether a fourth truancy report had been issued to the attendance supervisor or the superintendent of the school district. (*A.N.*, *supra*, 11 Cal.App.5th at pp. 406–407.) Before this court, the Attorney General argues that a fourth truancy report had been issued.

---

[13] As referenced above, section 48262 defines a "conscientious effort" as "attempting to communicate with the parents of the pupil at least once using the most cost-effective method possible, which may include electronic mail or a telephone call." (See *ante*, p. 3, fn. 4.) We do not address whether the juvenile court may exercise jurisdiction over a minor when a school official has made a conscientious effort to communicate with the minor's parents or guardians but has been unable to actually communicate with them. (See *ibid.*)

A.N. does not argue otherwise, and the record supports the Attorney General's argument. Specifically, A.N.'s attendance supervisor testified that a computerized system automatically sends a report to the school district whenever a teacher records a student as absent from or tardy to class and that the same system generates student attendance profiles that provide attendance supervisors with a list of each student's recorded unexcused absences and tardies. A.N.'s student attendance profile lists dozens of recorded unexcused absences or tardies prior to the filing of the wardship petition. Consequently, the juvenile court had jurisdiction over A.N. on the basis of A.N.'s four or more acts of being truant that were reported in accordance with the statutory scheme.

## III. CONCLUSION

The Court of Appeal declared that A.N. "refused to go to school" and "demonstrated [an] unwavering commitment to avoiding an education." (*A.N.*, *supra*, 11 Cal.App.5th at p. 405.) But the record suggests that A.N.'s attendance problems arose out of difficult circumstances at home and in her personal life. Both parties and amicus curiae CRLA agree that students often fall into truancy for reasons beyond their control. (See conc. opn., *post*, at p. 4.) The Court of Appeal also opined that school officials "did everything they could and should do to educate— not abandon—A.N." (*A.N.*, *supra*, 11 Cal.App.5th at p. 406.) But a SARB meeting was not held until A.N. had accumulated dozens of unexcused absences or tardies, and there is no evidence that any services were provided to her or her parents. When a habitual truant is adjudged a ward of the juvenile court but is never offered any services to address the underlying causes of his or her attendance problems, we question whether the statutory scheme functions as the Legislature expected.

That being said, we agree that the juvenile court possessed jurisdiction over A.N.  Therefore, we affirm the judgment of the Court of Appeal.

**CHIN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

In Re A.N.

S242494


Concurring Opinion by Justice Liu


I agree with today's opinion that Welfare and Institutions Code section 601, subdivision (b) (section 601(b)) authorizes juvenile court jurisdiction upon a minor's fourth truancy, even if the minor has not received services through a school attendance review board (SARB) or similar truancy mediation program. I write separately to highlight the tension between section 601(b)'s grant of jurisdiction and the rehabilitative and diversionary purpose of the Education Code's SARB provisions. (See maj. opn., *ante*, at pp. 13–17.) Those provisions signal the Legislature's recognition that school attendance problems are often traceable to family instability, poverty, homelessness, transportation issues, safety concerns, trauma, mental health challenges, or learning disabilities, and that appropriate guidance and assistance to students and their families can ameliorate such problems. By contrast, as studies have shown, a wardship petition in juvenile court may put students on a different path — one that significantly increases their likelihood of dropping out of school and entering the criminal justice system. Given its potentially profound consequences, it is widely believed that juvenile court involvement should be "a matter of last resort." (*Id.* at p. 13.) The jurisdictional statute at issue in this case is a funnel into what many call the school-to-prison pipeline. In light of today's decision, the Legislature

may wish to revisit what services or interventions are required before a student can be put onto this unpromising path.

Education Code section 48320, subdivision (a) provides that in establishing SARBs and defining their broad authority, "it is the intent of the Legislature that intensive guidance and coordinated community services may be provided to meet the special needs of pupils with school attendance problems or school behavior problems." "Composed of representatives from various youth-serving agencies, SARBs help truant or recalcitrant students and their parents or guardians solve school attendance and behavior problems through the use of available school and community resources." (SARB Handbook: A Road Map for Improved School Attendance and Behavior (2018) p. 11 (SARB Handbook); see Ed. Code, § 48321, subds. (a)(2) & (b)(1).) According to the State SARB, "the Legislature enacted . . . [s]ection 48320 to enhance the enforcement of compulsory education laws and to divert students with school attendance or behavior problems from the juvenile justice system until all available resources have been exhausted." (SARB Handbook, p. 10; see Ed. Code, § 48325.)

Other provisions of the Education Code also evince the Legislature's intent that "minors typically be referred to a SARB or a similar truancy mediation program before the juvenile court." (Maj. opn., *ante*, at p. 15.) Education Code section 48264.5 establishes a step-by-step process for addressing "the root causes" of school attendance problems (Ed. Code, § 48264.5, subd. (a)) and for utilizing SARBs or a similar truancy mediation program to improve attendance (*id.*, subd. (c)) in a manner consistent with the due process rights of students and their parents. To initiate the SARB process, the "school district supervisor of attendance" or another designated school official

2

must first refer the minor to the SARB. (*Id*., § 48263, subd. (a).) Upon referral, the SARB then "determines [whether] available community services can resolve the problem of the truant or insubordinate pupil." (*Id*., subd. (b)(1).) Education Code section 48320, subdivision (b) directs SARBs to: "(1) Propose and promote the use of alternatives to the juvenile court system. [¶] (2) Provide, in any proposed alternative, for maximum utilization of community and regional resources appropriately employed in behalf of minors prior to any involvement with the judicial system. [¶] (3) Encourage an understanding that any alternative based on the utilization of community resources carries an inherent agency and citizen commitment directed toward the continuing improvement of such resources and the creation of resources where none exist." (See also *id*., § 32261, subd. (b) ["the establishment of an interagency coordination system is the most efficient and long-lasting means of resolving school and community problems of truancy and crime"].) If the SARB concludes that "available community services cannot resolve the problem" or if "the pupil or the parents or guardians of the pupil, or both, have failed to respond to [SARB] directives," the SARB may refer the minor to juvenile court. (*Id*., § 48263, subd. (b)(2).) These statutes envision individualized guidance and community-based services coordinated through SARBs or a similar mechanism as preferred alternatives to juvenile court intervention.

The desirability of such alternatives is supported by empirical studies. (See, e.g., Petrosino et al., *Formal System Processing of Juveniles: Effects on Delinquency: A Systematic Review* (2010) Campbell Systematic Reviews, at p. 36 [reviewing 29 controlled trials and finding that juvenile court intervention increases the severity and frequency of subsequent delinquency,

especially compared to diversionary alternatives]; Petitclerc et al., *Effects of Juvenile Court Exposure on Crime in Young Adulthood* (2013) 54 J. Child Psych. & Psychiatry 291, 294 [identifying increased criminality into early adulthood among minors exposed to the juvenile court system, after controlling for covariates].)  It is also supported by the experiences of juvenile court judges and other judicial branch officers.  (See Coalition for Juvenile Justice, Positive Power: Exercising Judicial Leadership to Prevent Court Involvement and Incarceration of Non-Delinquent Youth (2012) pp. 6–7 [reporting judicial perspective that "bringing youth petitioned as truants before [the] court failed to improve their academic performance or attendance" and that "school-based and family-based responses to high-need youth" resulted in better outcomes]; *id.* at pp. 5–14 [collecting similar perspectives from juvenile court judges].)

A 2012 Judicial Council of California report noted that "[t]ruant children and children with school behavior problems tend to come from poor minority families that may be experiencing unemployment, hunger, housing issues, transportation issues, family dissolution or dysfunction, domestic violence, or community safety issues.  Children may also have learning disabilities or other issues that impact their ability to attend school. . . .  As such, truancy and school behavior interventions should involve addressing child and family issues holistically . . . .  Interventions should be supportive and involve the least punitive responses available, while at the same time reinforcing student and parent accountability . . . .  They should also focus on re-engaging the student in school, including attention to both attendance and academic problems."  (Judicial Council of Cal., Truancy and School Discipline: An Overview of the Literature and Statistics (2012) p. 11, citations omitted.)

Since 2014, the Judicial Council's Keeping Kids in School and Out of Court (KKIS) Initiative has worked to "change[] attitudes regarding school discipline in California" by promoting diversionary alternatives to the justice system. (Judicial Council of California, Summit Caps Five-Year Effort to Keep Kids in School and Out of Court (2020) <https://newsroom.courts .ca.gov/news/KKIS_rural_summit> [as of May 4, 2020]; all Internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/ 38324.htm>.) The KKIS Initiative has collected research suggesting the greater efficacy of community-based services than juvenile court intervention in addressing the causes of truancy and in improving school attendance and outcomes. (Judicial Council of Cal., Keeping Kids in School and Out of Court Initiative (2020) <https://www.courts.ca.gov/23902.htm> [as of May 4, 2020].) The initiative has also promoted a range of alternatives, including informal youth courts, community collaborations, and SARBs, that are designed to prevent students from entering the school-to-prison pipeline. (*Ibid.*)

Before 1994, "former section 601.1 of the Welfare and Institutions Code mandated initial referral to a SARB or a similar truancy mediation program, and section 601(b) formerly provided only two bases of juvenile court jurisdiction—both of which contemplated the prior use of a SARB or a similar truancy mediation program." (Maj. opn., *ante*, at p. 8.) In that context, we explained that "[t]he Education Code establishes a comprehensive mechanism for dealing with truants ranging from resort to various community programs, to special mediation programs. [Citations.] Truants are not, except in aggravated circumstances involving 'habitual' offenders, subject to the jurisdiction of the juvenile courts." (*In re James D.* (1987)

43 Cal.3d 903, 910.) Six unexcused absences, comprising four truancies, did not constitute "aggravated circumstances" at that time. (See maj. opn., *ante*, at pp. 8–9.) We observed that "[t]he Legislature's move towards utilizing the school attendance review boards as a condition precedent to the juvenile court's intervention is understandable and in keeping with legal commentary calling for greater participation of school and social welfare professionals, even to the exclusion of the juvenile court's jurisdiction." (*In re Michael G.* (1988) 44 Cal.3d 283, 290.)

As today's opinion explains, the Legislature in 1994 repealed former section 601.1 of the Welfare and Institutions Code and amended section 601(b) to authorize juvenile court jurisdiction after six unexcused absences. (Maj. opn., *ante*, at pp. 8–9.) Even so, the 1994 legislation encouraged SARB intervention before juvenile court jurisdiction. According to its summary digest, the bill "provide[d] that if a pupil *who has attended certain programs including a school attendance review board program*, has a 4th truancy in the same school year, the pupil shall be classified as an habitual truant, within the jurisdiction of the court, and may be adjudged a ward of the court." (Legis. Counsel's Dig., Sen. Bill No. 1728 (1993-1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 417, italics added.)

In cases like A.N.'s, the diversionary purpose of SARBs appears compromised by section 601(b)'s grant of jurisdiction to the juvenile court before the student has had an opportunity to benefit from SARB services. (See maj. opn., *ante*, at p. 26 ["we question whether the statutory scheme functions as the Legislature expected"].) The record here indicates that at least some of A.N.'s school attendance difficulties arose from challenging circumstances beyond her control. Less than a year

before her multiple ninth grade absences, a school counselor reported that A.N. was "feeling very troubled" because her nephew Daniel, whom she cared for regularly, was taken away from her family by Child Protective Services. This event, the counselor wrote, led A.N. to "engag[e] in self-mutilation." Yet before the school district referred A.N. to a SARB that could offer her services to identify and ameliorate these difficulties, the District Attorney filed a wardship petition against her.

The broad prosecutorial discretion arising under section 601(b) extends to an enormous number of students. In the 2018–2019 school year, at least 650,000 students in California public schools — nearly one-eighth of our schoolchildren — were chronically absent, meaning they were absent at least 10 percent of the school year, which is three times the number of absences necessary to be classified as an habitual truant. (Keeping Kids in School and Out of Court Initiative, *About Chronic Absenteeism and School Discipline* (2019) <https://www.courts.ca.gov/23904.htm> [as of May 4, 2020].) The highest rates of chronic absenteeism were observed among African American, American Indian, and Latino students. (*Ibid.*)

Not all counties have pursued truancy prosecutions as aggressively as Ventura County, where the petition against A.N. was filed. According to Ventura County's 2015–2016 annual SARB report, the District Attorney cited 869 students and 482 parents for truancy that school year. (Ventura County Off. of Education, Ventura County School Attendance Review Board Data Summary 2015-2016 (2016).) Amicus curiae California Rural Legal Assistance notes that Ventura County children and their parents were criminally charged at "much higher rates than students and parents in other counties." (See Pen. Code,

§ 270.1 [authorizing criminal prosecution of parents and guardians for their child's truancy]; Ed. Code, § 48293 [authorizing civil penalties ranging from $100 to $1000].) By contrast, Los Angeles County, which serves 10 times as many students, reported only 43 referrals to juvenile court during that same period. (Los Angeles County Off. of Education, Annual School Attendance Review Board (SARB) Report 2015-2016: Final Report (2016).) In light of such stark disparities, the Legislature may wish to reconsider the breadth of jurisdiction conferred by section 601(b). (See maj. opn., *ante*, at p. 17, fn. 12 [citing pending legislation that would eliminate juvenile court jurisdiction on the basis of four or more truancies].)

In sum, although the language of section 601(b) compels today's holding, the statute is in substantial tension with the Legislature's evident purpose in the Education Code to encourage diversionary alternatives to juvenile court intervention. This tension warrants renewed legislative consideration.

**LIU, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re A.N.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 11 Cal.App.5th 403
**Rehearing Granted**

_____

**Opinion No.** S242494
**Date Filed:** May 4, 2020

_____

**Court:** Superior
**County:** Ventura
**Judge:** William R. Redmond

_____

**Counsel:**

Stephen P. Lipson and Todd W. Howeth, Public Defenders, Michael C. McMahon, Chief Deputy Public Defender, and William Quest, Deputy Public Defender, for Defendant and Appellant.

Franchesca S. Verdin, Monica De La Hoya and Cynthia L. Rice for California Rural Legal Assistance, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Janill L. Richards, Deputy State Solicitor General, Christina Bull Arndt, Scott A. Taryle and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William Quest
Senior Deputy Public Defender
800 S. Victoria Ave., 2nd Floor
Ventura, CA 93009
(850) 654-3032

Christina Bull Arndt
Supervising Deputy Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013
(213) 269-6383