Filed 10/1/20

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B301147 |
| Plaintiff and Respondent, | (Super. Ct. No. 16F-06179) |
| | (San Luis Obispo County) |
| v. | |
| MATTHEW ROLAND BETTS, | |
| Defendant and Appellant. | |

The "One Strike" law (Pen. Code,[1] § 667.61) mandates indeterminate sentences for defendants who commit certain sexual offenses under specified circumstances. (*People v. Carbajal* (2013) 56 Cal.4th 521, 534.) The Legislature amended the law in 2010 by adopting Assembly Bill No. 1844 (A.B. 1844), which added subdivision (j)(2) to section 667.61. (See Stats. 2010,

---

[*] Pursuant to rules 8.1105(b) and 8.1110 of the California Rules of Court, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are Factual and Procedural History and Parts 1, 3, 4, and 5 of the Discussion.

[1] Undesignated statutory references are to the Penal Code.

ch. 219, § 16; Legis. Counsel's Dig., Assem. Bill No. 1844 (2009-2010 Reg. Sess.).) This subdivision increased the penalties imposed on defendants who commit certain sexual offenses against minors. (*Ibid.*) The issue presented here is whether convictions for committing lewd acts on a child are exempt from the sentencing provisions of subdivision (j)(2). We conclude "that the Legislature meant what it said" (*People v. Gray* (2014) 58 Cal.4th 901, 906 (*Gray*)), and that such convictions are subject to the subdivision's sentencing provisions.

A jury convicted Matthew Roland Betts of multiple counts of sexual abuse against two children: three counts of oral copulation or sexual penetration of a child under age 11 (§ 288.7, subd. (b); counts 1, 3, & 7) and six counts of lewd acts on a child under age 14 (§ 288, subd. (a); counts 2, 4, 5, 6, 8, & 9). The jury also found true allegations that Betts committed his lewd acts against more than one victim (§ 667.61, subd. (e)(4)) and that he engaged in substantial sexual conduct when he committed the crimes charged in counts 1 through 8 (§ 1203.066, subd. (a)(8)). The trial court sentenced him to concurrent terms of 25 years to life in state prison on counts 2, 4, 5, 6, 8, and 9 (§ 667.61, subd. (j)(2)) and concurrent terms of 15 years to life on counts 1, 3, and 7 (§ 288.7, subd. (b)), for a total indeterminate term of 25 years to life.

Betts contends: (1) the trial court prejudicially erred when it admitted evidence on child sexual abuse accommodation syndrome (CSAAS); (2) the sentences imposed on counts 2, 4, 5, 6, 8, and 9 were not authorized by section 667.61, subdivision (j)(2); (3) the sentences imposed on counts 2, 4, 5, 6, and 8 violate the prohibition against ex post facto laws; (4) the true findings on the substantial sexual conduct allegations in counts 1, 2, 3, 5, 6, and

2

7 must be vacated; and (5) the abstract of judgment requires correction.  In the published portion of our opinion, we conclude that the trial court properly sentenced Betts pursuant to section 667.61, subdivision (j)(2), for his convictions on counts 2, 4, 5, 6, 8, and 9.  In the unpublished portion, we vacate the true findings on six of the substantial sexual conduct allegations, order correction of the abstract of judgment, and otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

*Counts 1 – 8*

Elly was born in September 2002.  When she was three or four years old, her mother, Victoria, began dating Betts.  Victoria and Betts dated until the end of 2012.

Betts frequently stayed at Victoria's home.  For a few years, beginning when Elly was six or seven years old, Victoria attended weekly Alcoholics Anonymous meetings.  Betts would watch Elly while Victoria went to the meetings.

According to Elly, on some of those evenings Betts pulled down her pants and touched her vagina and buttocks.  He also digitally penetrated her.  He put her hand on his penis.  Elly did not disclose what Betts had done to her until an eighth-grade friend said that something similar had happened to her.

Victoria and Elly eventually moved to Hawaii, but returned to California in 2016 to visit.  During the visit, they had dinner with Betts.  Betts also gave Elly rides and exchanged messages with her about her boyfriend.

Around this time, Victoria noticed that Elly was having behavioral problems, and took her to see a counselor.  Elly told the counselor what Betts had done to her, and the counselor told Victoria, who notified the police.  Elly initially told police that the incidents with Betts had happened when she was nine or

3

10 years old.  She later remembered that, when she was seven years old, she had oral surgery and was afraid the anesthesia would make her say something about what Betts had done to her.  This led her to believe that Betts may have started abusing her earlier than she originally thought.

*Count 9*

Keely was born in July 2007.  Betts was friends with Keely's father, Robert.  In March 2016, Betts went to Robert's home to watch a presidential debate.  At one point during the debate Betts touched Keely's thigh.  Keely moved his hand away.  As the debate continued Betts touched the area around Keely's vagina.  She again moved his hand away.  Robert saw what Betts had done and told him to leave.  After he left, Keely told Robert what had happened.  They reported the incident to police.

Police interviewed Betts the following month.  He denied Keely's allegations.  He said he may have accidentally touched her shoulder or knee, but did not touch her inappropriately.

*Charges and allegations*

Prosecutors charged Betts with eight counts related to his abuse of Elly between September 2012 and September 2013:  three counts of oral copulation or sexual penetration of a child under age 11 (counts 1, 3, & 7), and five counts of lewd acts on a child under age 14 (counts 2, 4, 5, 6, & 8).  They charged him with a single count of lewd acts on a child for touching Keely (count 9).  They also alleged that Betts committed lewd acts against multiple victims, and that he engaged in substantial sexual conduct when committing counts 1, 2, 3, 4, 7, and 8.

4

*CSAAS evidence*

Prior to trial, prosecutors moved to admit expert testimony about CSAAS and the common behaviors of child sexual abuse victims. The trial court ruled that prosecutors could present testimony about CSAAS, but testimony regarding percentages was not admissible.

Betts moved to exclude any prosecution witnesses from opining about witness credibility. The court granted Betts's motion, but said that it would entertain specific objections on a question-by-question basis.

At trial, Dr. Anthony Urquiza explained that CSAAS evidence is not intended to determine whether a sexual abuse allegation is true. Rather, such evidence helps to explain many of the common behaviors of child victims. He said that "most [abused] children are sexually abused by someone . . . they know and [with whom] they have some type of ongoing relationship . . . . And . . . that person . . . is usually somebody who is bigger, older, stronger, more knowledgeable, in a position of power or control or authority." Victims thus tend to keep quiet about the abuse for a long time, especially "if the people who are assigned to keep the kids safe . . . are in some way impaired [*sic*] in that activity."

Dr. Urquiza said that "most kids have difficulty remembering details about what happened" to them. But "[d]oes that mean they can't remember? No, absolutely not." He also testified that "[i]t's sometimes puzzling to people that they may want to be around somebody who's sexually abusing them. . . . [¶] But if you understand that sometimes kids have a relationship that they enjoy or that they like, and in a family-base[d] situation maybe even love that person, even though they

5

are also being sexually abused, then they might want to be part of that relationship that they like, especially if they can accommodate or cope with the experience of sexual abuse, being sexually abused. That seems like an unusual thing, but it happens all the time."

## DISCUSSION

### 1. CSAAS evidence

Betts first contends the trial court prejudicially erred when it permitted prosecutors to present irrelevant and prejudicial testimony from Dr. Urquiza. But because Betts did not object to the testimony on these grounds at trial, his contention is forfeited. (*People v. Merriman* (2014) 60 Cal.4th 1, 84.)

Alternatively, Betts claims counsel provided ineffective assistance when he did not object to Dr. Urquiza's testimony. This claim requires Betts to show that counsel performed deficiently and that that deficient performance resulted in prejudice. (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.) He fails to make the first of these showings here.

Expert testimony on CSAAS is inadmissible to prove that a child has been sexually abused. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300 (*McAlpin*).) But it is admissible to rehabilitate the child's credibility where the defendant suggests that their conduct is inconsistent with their claims of abuse. (*Ibid.*) "'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*Id.* at p. 1301.)

Here, the evidence showed that both Elly and Keely delayed reporting Betts's abuse, that their initial reports were

6

not fully consistent with their later discussions, and, in Elly's case, that she continued to interact with Betts after his abuse. The trial court therefore did not abuse its discretion when it allowed Dr. Urquiza's testimony to rehabilitate their credibility and to explain misconceptions about their reactions to the abuse they endured. (*McAlpin, supra*, 53 Cal.3d at pp. 1299-1302.) Betts thus cannot show that counsel performed deficiently. (*People v. Anderson* (2001) 25 Cal.4th 543, 587 [counsel need not lodge futile objection].)

This case is unlike *People v. Julian* (2019) 34 Cal.App.5th 878, on which Betts relies. In *Julian*, Dr. Urquiza repeatedly referred to statistics on the likelihood of false sexual abuse allegations. (*Id.* at pp. 885-887.) This improper testimony "tipped the scales" in prosecutors' favor given the conflicts in the evidence, the "serious" inconsistencies in the victims' recollections of the defendant's alleged abuse, and the fact that the case was essentially a credibility contest between the defendant and the alleged victims. (*Id.* at pp. 887-888.) Here, in contrast, Dr. Urquiza did not cite any statistics on the falsity of sexual abuse allegations. And the evidence against Betts was much stronger than in *Julian*, with fewer evidentiary conflicts and the existence of non-victim witnesses—including Keely's father, Robert—to some of his abuse.

### 2. *Section 667.61, subdivision (j)(2)*

Betts contends the sentences on counts 2, 4, 5, 6, 8, and 9 must be reduced to 15 years to life because section 667.71, subdivision (j)(2), does not apply to convictions for lewd acts on a child under age 14. We disagree.

The application of section 667.71, subdivision (j)(2), presents an issue of statutory interpretation for our independent

7

review.  (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.)  Our fundamental task is to ascertain the Legislature's intent when it enacted the subdivision.  (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)  We begin with its words, giving them their plain, commonsense meanings.  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  We interpret those words in the context of section 667.61 as a whole (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123), harmonizing them with the section's other provisions whenever possible (*People v. Valencia* (2017) 3 Cal.5th 347, 357-358 (*Valencia*)).  If no ambiguity appears, "we presume that the Legislature meant what it said, and the plain meaning of the [subdivision] controls."  (*Gray*, *supra*, 58 Cal.4th at p. 906.)  We will follow that meaning unless doing so would lead to absurd results the Legislature did not intend.  (*People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

If we conclude that the meaning of subdivision (j)(2) is ambiguous, we may examine the legislative history to determine the Legislature's intent.  (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.)  We may also consider the impact of an interpretation on public policy and the consequences that may flow from it.  (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)  But we cannot insert words into the subdivision that the Legislature has omitted.  (*People v. Guzman* (2005) 35 Cal.4th 577, 587 (*Guzman*); see Code Civ. Proc., § 1858.)  Our job is not to rewrite a statute to conform to an assumed intent that does not appear from its language.  (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571.)

The Legislature enacted the One Strike law to increase the penalties imposed on defendants who commit certain sexual offenses under specified circumstances.  (Sen. Bill. No. 26,

Stats. 1993-1994, ch. 14, § 1.) The more serious circumstances were listed in subdivision (d) of section 667.61, the less serious in subdivision (e). (*People v. Lopez* (2004) 119 Cal.App.4th 355, 360.) The penalty imposed depended on the number and seriousness of those circumstances: If a defendant committed an offense "under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e)," they were to be sentenced to 25 years to life in state prison. (Former § 667.61, subd. (a).) If they committed their offense under just one of the circumstances specified in subdivision (e), however, they were to be sentenced to 15 years to life in prison. (Former § 667.61, subd. (b).) The age of the victim was not a factor under this scheme.

The One Strike law has been amended several times, including to increase the number of offenses to which its provisions apply and to mandate consecutive sentences for defendants convicted of certain offenses. (See Prop. 83, Gen. Elec. (Nov. 7, 2006), § 12; Senate Bill No. 1128, Stats. 2006, ch. 337, § 33.) The most recent substantive amendments were made in 2010, when the Legislature increased the penalties imposed on defendants convicted of sexual offenses against minors. (See Stats. 2010, ch. 219, § 16; Legis. Counsel's Dig., A.B. 1844 (2009-2010 Reg. Sess.).) Under the current version of the law, the penalty imposed on a defendant depends not only on the circumstances underlying their offense but also on the nature of the offense itself and the ages of the victim and the defendant.

A defendant is now subject to the One Strike law's sentencing provisions if they commit one of nine listed sexual offenses. (See § 667.61, subd. (c).) Three of those offenses require proof that the victim was under 14 years of age at the time of the

9

offense: lewd acts on a child, in violation of section 288, subdivision (a); forcible lewd acts on a child, in violation of section 288, subdivision (b); and continuous sexual abuse of a child, in violation of section 288.5. (§ 667.61, subds. (c)(4), (c)(8), & (c)(9).) With one exception, the law mandates the harshest penalties for defendants convicted of one of these offenses, or one of the other six offenses listed in subdivision (c) if the victim was under 14 years of age: "Any person who is convicted of an offense specified in subdivision (c), with the exception of a violation of subdivision (a) of [s]ection 288, upon a victim who is a child under 14 years of age under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e), shall be punished by imprisonment in the state prison for life without the possibility of parole. Where the person was under 18 years of age at the time of the offense, the person shall be punished by imprisonment in the state prison for 25 years to life." (*Id.*, subd. (j)(1).) "Any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life." (*Id.*, subd. (j)(2).) The law mandates the same penalties for defendants whose victims are minors 14 years of age or older, but only if they were convicted of one of a more narrow list of offenses. (*Id.*, subds. (*l*), (m), & (n).)

A straightforward application of section 667.61's provisions reveals no sentencing error here. Lewd or lascivious acts against a child under age 14 is an offense specified in subdivision (c)(8). Committing that offense against multiple victims is a circumstance specified in subdivision (e)(4). Thus,

10

pursuant to subdivision (j)(2), the trial court properly imposed sentences of 25 years to life in prison on counts 2, 4, 5, 6, 8, and 9.

Betts disagrees. He points out that, unlike most of the other offenses listed in subdivision (c), a conviction for lewd acts on a child *already* requires the victim to be under 14 years old. Applying the penalty mandated by subdivision (j)(2) to such a violation, he argues, renders that subdivision's phrase "upon a victim who is a child under 14 years of age" mere surplusage. To Betts, this shows that the Legislature intended to exempt lewd acts on a child convictions from this subdivision's provisions, as it did with subdivision (j)(1). (Cf. *Valencia*, *supra*, 3 Cal.5th at p. 357 [a "'construction making some words surplusage is to be avoided'"].)

The rule against surplusage is not so rigid. (*In re J. W.* (2002) 29 Cal.4th 200, 209.) Betts is correct that applying subdivision (j)(2) to lewd acts on a child convictions renders some of the language in the subdivision surplusage. But the same is true when the subdivision is applied to convictions for forcible lewd acts on a child and continuous sexual abuse of a child. And for defendants who commit one of those three offenses under the circumstance specified in subdivision (d)(7). (See § 667.61, subd. (d)(7) [infliction of bodily harm on a victim "under 14 years of age"].) Exempting these offenses from the One Strike law's harsher penalties for defendants who commit sexual offenses against children would require us to elevate the rule against surplusage over legislative intent. That we cannot do. (*People v. Rizo* (2000) 22 Cal.4th 681, 687 [minor redundancies permissible when they effectuate legislative intent].)

Betts also argues that applying subdivision (j)(2) to lewd acts on a child convictions renders subdivision (b)

11

surplusage. This argument confuses surplusage with inapplicability. Simply because a sentencing provision does not apply to certain convictions does not mean that that provision is surplusage; surplusage results when a provision *does* apply. By its very terms ("[e]xcept as provided in subdivision (a), (j), (*l*), or (m)"), subdivision (b) does not apply when subdivision (j)(2) does.

Next, Betts claims that a straightforward interpretation of subdivision (j)(2) creates an anomaly between the sentencing scheme for lewd acts on a child and that for all other offenses listed in subdivision (c). A defendant convicted of lewd acts on a child will be sentenced to 25 years to life in prison no matter whether they committed their crime under one or more of the circumstances specified in subdivision (d) or one or more of the circumstances specified in subdivision (e). (§ 667.61, subds. (a) & (j)(2).) But a defendant convicted of forcible lewd acts on a child or continuous sexual abuse of a child is subject to two possible sentences: 25 years to life if the offense was committed under one subdivision (e) circumstance, or life without the possibility of parole if it was committed under one or more of the circumstances specified in subdivision (d) or two or more of the circumstances specified in subdivision (e).[2] (*Id.*, subds. (j)(1) & (j)(2).) And if the defendant is convicted of one of the six other offenses listed in subdivision (c), they are subject to a sentence ranging from 15 years to life in prison (*id.*, subd. (b)) to 25 years to life (*id.*, subds. (a), (j)(1), (j)(2), (*l*), & (m)) to life without the possibility of parole (*id.*, subds. (j)(1) & (*l*)), depending on the

_____

[2] The consequences are different if the forcible lewd acts on a child or continuous sexual abuse of a child was committed by a minor: 25 years to life, regardless of the circumstances. (§ 667.61, subds. (j)(1) & (j)(2).)

12

nature of the offense, the circumstances under which it was committed, the age of the victim, and the age of the defendant.

We perceive no anomaly in this multi-tiered sentencing scheme.  As set forth above, the purpose of A.B. 1844 was to increase the penalties imposed on defendants who committed sexual offenses against minors.  The bill did just that: It increased the penalty *from* 25 years to life *to* life in prison without the possibility of parole for a defendant who committed any one of six listed offenses on a minor under one or more subdivision (d) circumstances or two or more subdivision (e) circumstances.  (Compare former § 667.61, subd. (a) with current § 667.61, subds. (j)(1) & (*l*).)  It increased the penalty *from* 25 years to life *to* life without the possibility of parole for a defendant who committed either of two additional offenses on a child under 14 under one subdivision (d) circumstance or two subdivision (e) circumstances.  (Compare former § 667.61, subd. (a) with current § 667.61, subd. (j)(1).)  It increased the penalty *from* 15 years to life *to* 25 years to life for a defendant who committed any of six listed offenses on a minor under one subdivision (e) circumstance.  (Compare former § 667.61, subd. (b) with current § 667.61, subds. (m) & (j)(2).)  And it increased the penalty *from* 15 years to life *to* 25 years to life for a defendant who committed any of three listed offenses on a child under 14 under one subdivision (e) circumstance.  (Compare former § 667.61, subd. (b) with current § 667.61, subd. (j)(2).)

That A.B. 1844 did not similarly increase the penalty for a defendant who committed lewd acts on a child under one subdivision (d) circumstance or two subdivision (e) circumstances does not suggest that the Legislature intended for the exception set forth in subdivision (j)(1) ("with the exception of a violation of

13

subdivision (a) of [s]ection 288") to also apply to subdivision (j)(2). Were that the case, A.B. 1844 would not have increased the penalty for committing lewd acts on a child *at all*; it would still be subject to subdivisions (a) and (b) rather than (a) and (j)(2).

Betts argues that subjecting lewd acts on a child convictions to subdivision (j)(2)'s sentencing provisions means that such convictions will never be subject to the sentencing provisions of subdivisions (a) and (b). The opposite is true: lewd acts on a child is the *only* offense listed in section 667.61 that can be committed against a minor and be subject to subdivision (a)'s sentencing provisions. Every other listed offense committed against a minor is subject to the stricter sentencing provisions of subdivisions (j)(1), (j)(2), (*l*), and (m).

Betts also claims that subjecting lewd acts on a child convictions to subdivision (j)(2) would incentivize a defendant to commit their crime in a more heinous manner since they would receive the same sentence no matter how many circumstances listed in subdivisions (d) and (e) were found true. But many of the circumstances listed in those subdivisions—inflicting mayhem or torture or other bodily injury on the victim, tying or binding the victim, using a deadly weapon—would elevate the offense from lewd acts on a child to forcible lewd acts on a child, subjecting the defendant to the harsher sentencing provisions of subdivision (j)(1). And while we presume that all people know the law (*Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481, 1506-1507), we question whether that presumption applies to "'Byzantine'" sentencing laws that can be "'bewildering in [their] complexit[ies]'" (*People v. Winslow* (1995) 40 Cal.App.4th 680, 684, fn. 1).

Finally, Betts argues the "rule of lenity" requires us to exempt lewd acts on a child convictions from the provisions of subdivision (j)(2).  But as our Supreme Court has stated, "'"the rule of lenity applies 'only if two reasonable interpretations of the statute stand in relative equipoise.'"'" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1271.)  It "'has no application where, "as here, a court 'can fairly discern a contrary legislative intent.'"' [Citations.]" (*Ibid.*)

We conclude that lewd acts on a child convictions are not exempt from the sentencing provisions of section 667.61, subdivision (j)(2).  We accordingly decline Betts's invitation to insert the exemption contained in subdivision (j)(1) into subdivision (j)(2). (*Guzman*, *supra*, 35 Cal.4th at p. 587.)

### 3. *The prohibition against ex post facto laws*

Betts contends the sentences on counts 2, 4, 5, 6, and 8 violate the prohibition against ex post facto laws because the jury did not determine that he committed these offenses after the Legislature enacted section 667.61, subdivision (j)(2).  (See *People v. White* (2017) 2 Cal.5th 349, 360 ["A statute violates the prohibition against ex post facto laws if it . . . increases the punishment for a crime after it is committed."].)  But A.B. 1844 went into effect in September 2010.  (Stats. 2010, ch. 219, § 29.)  The amended information stated that Betts committed counts 2, 4, 5, 6, and 8 between September 2012 and September 2013.  And the verdict forms stated that the jury found Betts guilty of the charges "as alleged . . . in the amended information."  The jury thus necessarily determined that Betts committed his crimes at least two years after the Legislature added subdivision (j)(2) to section 667.61.

### 4. *Substantial sexual conduct allegations*

Betts contends, and the Attorney General concedes, that the true findings on the substantial sexual conduct allegations tied to counts 1, 2, 3, 5, 6, and 7 must be vacated. We agree.

A defendant convicted of violating section 288 or 288.5 is ineligible for probation if they had "substantial sexual conduct with a victim . . . under 14 years of age." (§ 1203.066, subd. (a)(8).) "'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the [defendant] by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the [defendant]." (*Id.*, subd. (b).) Subject to an exception not relevant here, section 1203.066 applies only "if the existence of any fact required in [subdivision (a)(8)] is alleged in the accusatory pleading and is either admitted by the defendant in open court, or found to be true by the trier of fact." (*Id.*, subd. (c)(1).)

Here, the substantial sexual conduct allegation did not apply to counts 1, 3, and 7 because those counts charged violations of 288.7, not section 288 or section 288.5. (§ 1203.066, subd. (a)(8).) The allegation did not apply to count 2 because the act underlying that charge—when Betts grabbed Elly's buttocks—does not meet the definition of "substantial sexual conduct." (*Id.*, subd. (b).) And it did not apply to counts 5 or 6 because prosecutors did not allege it in conjunction with those charges in the information. (*Id.*, subd. (c)(1).) The true findings on these allegations must accordingly be vacated.

## 5. *Abstract of judgment*

Finally, Betts contends, and the Attorney General again concedes, that the abstract of judgment must be corrected. We agree.

When an abstract of judgment does not accurately reflect the trial court's oral pronouncement of sentence, an appellate court may order correction of the error. (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14.) The court below sentenced Betts to concurrent terms of 25 years to life in prison on counts 2, 4, 5, 6, 8, and 9, and concurrent terms of 15 years to life on counts 1, 3, and 7. But the abstract of judgment does not list the sentence on count 1 as concurrent. It does not list the conviction on count 2. And it does not specify the length of the sentences imposed on counts 8 and 9. These errors and omissions must be corrected.

## DISPOSITION

The true findings on the substantial sexual conduct allegations tied to counts 1, 2, 3, 5, 6, and 7 are vacated. The matter is remanded to the trial court with directions to order the clerk of the court to prepare a new abstract of judgment that: (1) omits those six findings, (2) states that the sentence imposed on count 1 is to run concurrently with those imposed on all other counts, (3) includes Betts's conviction on count 2, and (4) specifies the lengths of the sentences imposed on counts 8 and 9. After preparing the new abstract, the clerk shall forward a certified

17

copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>


TANGEMAN, J.

We concur:


YEGAN, Acting P. J.


PERREN, J.

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.